————o————

LOUDEN WILLIAMS, Appellant, *vs.* JAMES K. WALL, Respondent.

1. *Gaming contract—Draft given in payment of bet, and money collected by indorsee—Liability to owner in case of knowledge of wager—In case of ignorance.*—The indorsement of a draft, by the owner, in payment of a gambling debt, although the paper were issued prior to the incurring of the debt and for a legal consideration, comes within the inhibition of the Gaming Act; (Wagn. Stat., 661.) and in contemplation of that statute, the indorsed draft may be treated as a security or a new bill. Such indorsement under the statute is void and conveys no title. And where the draft is assigned or transferred by the party receiving it, to another, also cognizant of the facts, who collects the amount, he will be held to have converted the instrument and its proceeds, and will be liable to the owner for sum collected. And, *semble,* that the same liability will attach, even though such third party be ignorant of the wager. (See Koch vs. Branch, 44 Mo., 542.)

*Appeal from Buchanan Circuit Court.*

*B. R. Vineyard*, for Appellant.

I. Defendant, Wall, even though an innocent party, was liable for the conversion of the draft. (Koch vs. Branch, 44 Mo., 542; Chapin vs. Drake, 75 Ill., 295; Edw. Bills, § 337; Sto. Prom. Notes, § 192.) Much more was this the case where, as was here the fact, he had knowledge. (Lyle vs. Lindsey, 5 B. Monr., 123; Pope's Adm'r vs. McKinney, 3 B. Monr., 93.)

*Bennett Pike*, for Respondent.

I. The first two sections of the statute touching gaming, confine the action to that by the loser, his heirs, etc., against the winner; and the third and fourth sections do not include drafts executed by outside parties and simply held by those to the wager. This is not a suit to collect money on a note or other security, the consideration of which is money won at gaming, but simply to recover the value of a draft as money lost at gaming.

The statute will not authorize an action of this sort against one who is merely a collector for the winner.

SHERWOOD, Judge, delivered the opinion of the court.

Our attention has been specially called to the plaintiff's second count.

It charges in substance that on the 3rd of October, 1873, and within three months of the commencement of his action, the plaintiff was the owner of a certain draft for $1,100, drawn by the Citizens' Bank of Greensbury, Indiana, on the 3rd National Bank of N. Y. City; that one Bailey, a gambler, induced plaintiff to endorse and put up as a stake on a game of chance called "three card monte," the said draft, and thereupon won the same from him; that Bailey having thus become the possessor of the draft, acquainted the defendant with all the above related circumstances, in reference to the draft, and induced him, in consideration of an agreement that defendant might retain $100 of the amount of the draft when collected, to take steps for its collection; that, in pursuance of this fraud-

ulent design against plaintiff, Bailey indorsed and delivered the draft to defendant, who in turn indorsed and delivered it to a banker, ignorant of the circumstances, who collected the same from the bank on which it was drawn, also, ignorant of any wrong having been done, paid the proceeds to defendant, who, retaining therefrom the sum agreed upon, paid the residue to Bailey; that by reason of the premises and the acts of the defendant, the draft, without consideration, was lost to the defendant, and the sum of $1,100, the proceeds arising therefrom, received by defendant to plaintiff's use; for which he asked judgment. These allegations were held not good on demurrer.

I. The first section of the act in relation to gaming (Wagn. Stat., 661), allows a recovery of money or property won thereby, by any person; and is not at all restrictive in its operation as to the person or persons, from whom such recovery may be had.

The heirs, legal representatives and creditors of the losing party are, however, limited by the terms of the second section to a recovery against the *winner* alone.

The third section declares void all judgments by confession, conveyances, bonds, bills, notes and securities, when the consideration is money or property won at any game or gambling device. Provision is also made by that section to vacate such judgments, and to cancel such notes, etc., by proper procedure on the part of the person directly interested, his heirs, legal representatives, creditors, etc.

The fourth section prevents the assignment of any bond, bill, judgment, etc., from affecting the defense of the person executing the same.

And the ninth section limits the period wherein action must be brought for the recovery of money or property to three months.

II. The central idea of the act before us, which is evidently in aid of the statute defining and punishing gambling as a criminal offense, is to discourage and suppress gaming by the most effective of all methods, that of preventing the gambler

from retaining the spoils of his nefarious vocation, and from successfully transferring them to colleagues as unscrupulous as himself.

III. No doubt is entertained that the indorsement from plaintiff to Bailey, falls within the inhibitions of the act under consideration, as it is a fresh and substantive contract and may be regarded either as a security (2 Bouv. L. Dict., 493), or as a new bill (Slacum vs. Pomery, 6 Cranch, 221 ; Coffee vs. Planters Bk. of Tenn., 13 How., 183 ; Van Staphorst vs. Pearce, 4 Mass., 258), within the meaning of that act; and unless such construction be given thereto, the wholesome provisions of this statute can with ease be evaded, by simply indorsing for gaming purposes, antecedent securities, whose consideration is altogether legal; thus defeating the evident intent which gave origin to the statute. No such view of the law can therefore be entertained.

In Illinois, under a similar prohibitory enactment, it was held that an indorsement of a draft was in the purview of the law, although not expressly named therein. (Chapin vs. Drake, 57 Ill., 295.)

IV. As the indorsement, under the statute, was absolutely *void*, no title to the draft or authority to deal therewith, passed to Bailey or to his immediate transferee, the defendant. (Edw. Bills, etc., 337; Sto. Prom. Notes, §§ 192, 193.) And as the latter received and collected the draft with full knowledge of all the attendant facts, his acts cannot be otherwise regarded than a conversion of the draft and of its proceeds. For "a wrongful taking or assumption of a right to control or dispose of property, constitutes a conversion. Indeed any wrongful act, which negatives or is inconsistent with the plaintiff's right, is *per se* a conversion." (Schroeppel vs. Corning, 5 Denio, 236.)

In Stephens vs. Elwall, (4 Maule & Selw., 259), Lord Ellenborough, where a clerk acting "*under an unavoidable ignorance,*" and for his master's benefit, had shipped the goods to his principal, remarked, "a person is guilty of a conversion who intermeddles with any property and disposes of it, and it is

no answer that he acted under authority from another, who had himself no authority to dispose of it."

In Koch vs. Branch, (44 Mo., 542), a commissary voucher was collected for; and paid over to, the innocent purchaser of such voucher by an agent, who charged for his services no commission; and yet the agent, in that transaction, was held liable to the true owner, for the value of the voucher thus disposed of.

And authorities are not wanting, the case last cited being of the number, that the same liability attaches to the unauthorized act, whether the actor was conscious of the wrong he was committing or not. (Koch vs. Branch and Chapin vs. Drake, *supra*.)

But the plaintiff's allegations do not require the extension of the rule, so far, in the case at bar; as here the fact of notice is expressly alleged. For these reasons, then, under the circumstances detailed in the petition, the act of the defendant in collecting and disposing of the proceeds of the draft in the manner stated, was as much unauthorized, as much a conversion, and gave rise to as valid a cause of action against him, as though he had, in the first instance, picked up the draft on the street.

If the draft had been received by the defendant for collection, and after collecting its proceeds, he had been notified by the true owner not to pay them over to Bailey, no one would feel hesitancy, had the defendant acted in disobedience of such notification, in asserting his unquestionable liability. How then, is the case unfavorably altered for the plaintiff, because such notification came before hand and contemporaneously with the reception of the draft?

Judgment reversed and cause remanded; All the judges concur.