SAVINGS BANK OF KANSAS *v.* NATIONAL BANK OF COMMERCE, (CARPENTER, Interpleader.)

*(Circuit Court, W. D. Missouri, W. D.* April 24, 1889.)

1. GAMBLING CONTRACTS—ASSIGNMENT.
   Under Comp. Laws Kan. 1885, § 239, declaring the keeping of a faro-bank, and inducing or permitting any person to play thereat, a misdemeanor punishable by fine and imprisonment, and section 1018, declaring that the common law, as modified by the constitution, statutes, judicial decisions, and conditions and wants of the people remains in force, the transfer of a certificate of deposit in consideration of money lost at faro is void.

2. SAME—CONFLICT OF LAWS.
   The certificate having been made in a state in which the keeping and use of a faro-bank is a crime, and in which such transfer is declared void by express statute, (Rev. St. Mo. §§ 5720, 5721,) the transfer will be held void there though made in a state in which it is valid.

3. SAME—BURDEN OF PROOF.
   The certificate being payable to the transferrer's order, the transferee must show that the transfer is valid before he can recover on the certificate. Such transfer is not the case of wager in which the stake has been turned over to the winner before suit brought.

4. NEGOTIABLE INSTRUMENTS—REQUISITES—CERTIFICATE OF DEPOSIT.
   Under Rev. St. Mo. § 547, providing that a promissory note payable in money expressed to be for value received, etc., shall be negotiable as inland bills of exchange, a certificate of deposit made, issued, and to be paid there and lacking the words "for value received," is not negotiable, and it is immaterial that it was transferred in another jurisdiction.

5. SAME—INDORSEMENT AND TRANSFER.
   A bank receiving such certificate, and simply issuing therefor its own certificate of deposit for a corresponding amount, the latter certificate not having been transferred, but being within the control of the court, is not an innocent purchaser for value.

6. GAMBLING CONTRACTS—RESTITUTION.
   Where the transferee at the time of the transfer advanced money to the transferrer on account of the transfer and because of the transferrer's misfortune, such money should be restored out of the proceeds.

At Law.

Action by H. C. Carpenter against C. L. Maltby and the Savings Bank of Kansas and action by the Savings Bank of Kansas against the National Bank of Commerce of Kansas City, submitted by stipulation as an interpleader between the savings bank and Carpenter. Rev. St. Mo. 1879, § 547, provides that "every promissory note for the payment of money to the payee therein named or order or bearer and expressed to be for value received * * * shall have the same effect and be negotiable in like manner as inland bills of exchange."

*Hutchings & Keplinger* and *Jas. W. Garner,* for Savings Bank of Kansas.

*Karnes, Holmes & Krauthoff,* for National Bank of Commerce.

*Wash Adams* and *E. C. Mapledorum,* for Carpenter.

PHILIPS, J. This controversy grows out of substantially the following state of facts:

On June 15, 1888, Carpenter deposited with the said Bank of Commerce of Kansas City, Mo., the sum of $3,500, and took from the bank its certificate of deposit therefor as follows:

"NATIONAL BANK OF COMMERCE OF KANSAS CITY.

"$3,500.00.                    KANSAS CITY, MO., June 15, 1888.

"H. C. Carpenter has deposited in this bank thirty-five hundred and 00-100 dollars, payable to the order of himself on the return of this certificate properly endorsed.

"$3,500.00.                    H. C. SCHWITZGEBEL, A. C."

On the day following, Carpenter visited a gambling house just across the line in the state of Kansas, kept by one Clayton Maltby, who ran what is known as a "Faro-bank," where Carpenter was induced to play at said gambling device, and lost the sum of $3,500, to pay which he wrote his name on the back of said certificate of deposit and delivered the same to said Maltby or his agent. On the same day Maltby, through his agent, presented said certificate to the said Bank of Commerce for payment, which was refused by the bank, on the ground that it had been notified by Carpenter not to pay the same. Thereupon Maltby on the same day took said certificate to the Savings Bank of Kansas, which is located just across the line from Kansas City, Mo., and deposited the same in said last named bank, receiving therefor the following certificate:

"$3,500.00.          CERTIFICATE OF DEPOSIT.

"This certificate is not subject to check.

"SAVINGS BANK OF KANSAS.

"KANSAS CITY, KAN., June 16, 1888.

"This is to certify that C. L. Maltby has deposited the sum of thirty-five hundred dollars, with the Savings Bank of Kansas, for the term of ——— months, which certificate is to draw interest at the rate of ——— per cent. per annum.

"No. 608.                    R. W. HILIKER, Cashier."

The evidence shows that Maltby, who seems to have done a large business, usually made deposits of money at this bank, and took therefrom similar certificates of deposit; and that the bank took the certificate of the Bank of Commerce without any notice as to the manner in which Maltby acquired the same. On the 18th day of June following, the Savings Bank of Kansas sent

v.38F.no.10—51

the certificate to the Bank of Commerce for collection, through the clearing house of Kansas City, Mo., where it was thrown out for non-payment; and on the same day it was duly protested, steps having been taken by Carpenter looking to the stopping of its payment. In August following, Carpenter instituted suit in the circuit court of Jackson county, Mo., against Maltby and the said Savings Bank of Kansas, having for its object the cancellation of said indorsement on said certificate of deposit held by the savings bank and its reclamation. This proceeding was based upon provisions of the statute in Missouri authorizing such action growing out of the loss of such security at such gambling device. This suit, on the application of the bank, was removed from the state court to this court. On the 30th of July, 1888, the said savings bank instituted suit in this court against the said National Bank of Commerce to recover judgment on the certificate of deposit issued by the latter bank to said Carpenter. The cause was submitted to the court for hearing, on stipulations of all parties concerned that the two causes should be heard together, as if Carpenter appeared as interpleader in said controversy. The defendant bank, by its answer and position in this controversy, is an indifferent party, asking to be protected, ready and willing to pay over its debt to whomsoever the court may find to be entitled thereto. So that the real controversy here is between the savings bank and Carpenter.

The only consideration for the transfer of the certificate from Carpenter to Maltby being for so much money lost by Carpenter at the game of "faro" run by Maltby, had such loss occurred in Missouri, the transfer, both as to Maltby and any assignee under him, would have been absolutely void and of no effect. The indorsement on the certificate by Maltby would be as if never written. Rev. St. Mo. §§ 5720–5723; *Williams* v. *Wall*, 60 Mo. 318.

The contention of plaintiff, however, is—*First*, that the gambling device in question, as also the indorsement and deposit of the certificate in the savings bank, occurred in the state of Kansas; and, *second*, that the certificate of deposit issued therefor by the savings bank to Maltby occurred in the state of Kansas; and, therefore, the rights of the plaintiff are to be determined by the law of the latter state as it affected those transactions. Flowing from these assumptions, plaintiff contends—*First*, that there is no statute of Kansas akin to that of Missouri invalidating and nullifying the transaction between Carpenter and Maltby; and, *second*, that such certificate of deposit in the state of Kansas possesses the quality of commercial paper, negotiable as an inland bill of exchange; and, *third*, that the plaintiff acquired the same in the usual course of trade, as an innocent purchaser. By the criminal statutes of that state, (section 239, Comp. Laws Kan. 1885,) the keeping of such a gambling device as a "faro-bank," and inducing or permitting any person to play thereat, are declared a misdemeanor, punishable by imprisonment in a county jail, not exceeding one year, and by a fine not exceeding $1,000. It is true that no provision like that of the Missouri statute is found declaring all conveyances, bonds, notes, bills, etc., predicated of such gambling transactions, null and void. But does it follow that an act, declared by the criminal statute of the state to be a misdemeanor punishable by imprisonment and fine as contrary to the moral sense of the people and inimical to the well-being of society, can be made

the basis of a contract between the criminal actors, enforceable in her courts? It would certainly be a marked incongruity for the civil courts of a state to lend their countenance and aid to a contract between two gamblers, when the criminal courts were punishing corporally the parties for violating, in the act leading to the contract, the Criminal Code designed to suppress vice and preserve the public morals. It is expressly declared in section 3, p. 1018, Comp. Laws Kan. 1885, that "the common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, shall remain in force in aid of the general statutes of this state. * * *" The common law of England, as altered by the statute of 9 Anne, c. 14, declared "that all notes, bills, bonds, etc., given * * * by any person or persons whatsoever, where the whole or any part of the consideration * * * shall be for any money or other valuable thing whatsoever, won by gaming, * * * shall be utterly void, frustrate, and of no effect to all intents and purposes whatsoever." See 4 Bac. Abr. 456; *Vaughan* v. *Whitcomb*, 2 Bos. & P. (N. R.) 413; *Evans* v. *Cook*, 11 Nev. 75.

In *Harris* v. *Runnels*, 12 How. 83, it is said:

"The object of all law is to repress vice and to promote the general welfare of society; and it does not give its assistance to a person to enforce a demand, originating in his breach or violation of its principles and enactments. Contracts in violation of statutes are void; and they are so, whether the consideration to be performed or the act to be done be a violation of the statute. A statute may either expressly prohibit or enjoin an act, or it may impliedly prohibit or enjoin it, by affixing a penalty to the performance or omission thereof. It makes no difference whether the prohibition be expressed or implied. In either case a contract, in violation of its provisions, is void."

And further on it is said that this rule is always to be applied "when the statute was made for the protection of the public from moral evils or from those which we know from experience that society must be guarded from by preventive legislation." A penalty implies a prohibition. I think it not too much to say, that the consensus of the moral sense of the American people is that wagering contracts and transactions growing out of such a gambling device as "faro" are repugnant to the well-being of society, fraught with vice, and pregnant with demoralization, corrupting alike to youth and the aged. They must, therefore, be contrary to public policy, and be subject to the wholesome maxims, *ex turpi causa non oritur actio; ex dolo malo non oritur actio.*

Conformably to this principle it is held in *Conner* v. *Mackey*, 20 Tex. 747, that where the consideration of the note sued on was money won at a game of cards called "Poker," the consideration was illegal, on the general ground that gaming at cards tends to immorality. This doctrine has been recognized by the courts of Kansas. *Reynolds* v. *McKinney*, 4 Kan. 109; *Cleveland* v. *Wolff*, 7 Kan. 187.

Counsel for plaintiff, seizing upon the proposition advanced by counsel for Carpenter that the case may be regarded as an action of replevin by Carpenter to recover possession of the certificate of deposit, contend that the certificate of deposit itself was wagered on the game, and it having been actually turned over to the winner, both parties being *in pari delicto,*

replevin will not lie to recover it back in the absence of an express statute, likening the case to that where a stakeholder had turned over the stake to the winner before action brought. That is not, however, this case. The certificate, being payable to order, was not available to any third party, without the indorsement of Carpenter. He indorsed it and turned it over to Maltby in settlement of his loss sustained on the hazard. This action is to recover on this evidence of debt, in which, to give plaintiff any standing in court, it is indispensable, both in pleading and proof, to show a valid transfer by indorsement by the payee. This, therefore, brings into view the transaction, the fact of the indorsement, and the plaintiff's right to enforce the contract as against the payor and the interpleader, Carpenter. A check placed in the hands of B. on a wager with C. as to the handwriting of D. has been held to be void. *Edgell* v. *McLaughlin*, 6 Whart. 176. And if there had been money in bank and the loser had drawn it out to prevent payment, he would not have been liable to the winner for money had and received. *Denniston* v. *Cook*, 12 Johns. 376.

If it were conceded, however, that this action would be maintainable in the forum of Kansas, would the courts of Missouri entertain such action? We make no question of the general rule that a contract made in another jurisdiction valid by the *lex loci contractus* is generally enforceable in every other jurisdiction. But this rests upon the doctrine of comity; and depending upon this comity, *jure gentium*, the law of public preservation, like the natural law of self-preservation, forbids that any nation or state should be bound to recognize and enforce any contract, no matter where made, inimical or injurious to its own interests, or hurtful or pernicious to its moral sense and public policy. Story, in his Conflict of Laws, § 258, reckons among these contracts, such as "in their own nature are founded in moral turpitude and are inconsistent with the good order and solid interests of society." "No people are bound or ought to enforce or hold valid in their courts of justice any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law." 2 Kent, Comm. 458.

The statute of this state denounces the keeping and use of "faro"-banks as a crime; and declares all conveyances, bonds, bills, notes, and securities, the consideration of which is money or property won at any game or gambling device, void and annullible by her courts, even in the hands of an assignee. This statute is but expressive of the moral sense of the community, and is, as held by the supreme court, in *Williams* v. *Wall*, 60 Mo. 318, "in aid of the statute punishing gambling as a criminal offense."

In *Watson* v. *Murray*, 23 N. J. Eq. 257, it was held that a partnership in the lottery business in another state would not be enforced in New Jersey, although valid where formed, because lotteries are *mala in se*, "bad in their nature and bad in their results; notoriously prejudicial to the interests and morals of the public."

In the case at bar, Maltby established his gambling house just across the state line in Kansas City, Kan., with but a street or block separating it from Kansas City, Mo.; so close that the immoral atmosphere of his

establishment can be breathed by the people of Missouri, and its demoralizing influence be felt in the adjacent community.   It does seem to me that the courts of justice in this jurisdiction ought to close their doors against such a suitor when he brings his transactions, growing out of his nefarious calling, to her temples for arbitrament.

But, say learned counsel, the certificate of deposit in question under the Kansas statute, where it was transferred, is in the nature of a negotiable promissory note, and the plaintiff is an innocent purchaser. , To this we answer, the certificate in question was issued by the defendant bank in the state of Missouri, and this is the place of performance of the contract.   By the statute law of this state the certificate of deposit is not a negotiable instrument, as it lacks the essential words, "for value received."   *Bank* v. *Bank*, 3 Mo. App. 362; *Bailey* v. *Smock*, 61 Mo. 219. Its negotiation in a foreign jurisdiction cannot alter the rights of the parties when sued in this jurisdiction, the place of the contract and the place for its performance.   *Dickinson* v. *Edwards*, 77 N. Y. 573.

Is the plaintiff an innocent purchaser?   To constitute it such it must have taken the certificate without notice of how Maltby obtained it, and paid or parted with something of value therefor.   The bank paid no money on it, but only issued to Maltby its certificate of deposit for a corresponding amount.   If that certificate in the state of Kansas possessed the quality of negotiable commercial paper, it may be conceded that if Maltby had negotiated it, or that it was now so situated that the bank did not know who held it and might become liable to some third innocent holder, its attitude in this controversy might be different.   *Digby* v. *Jones*, 67 Mo. 104–108.   But the certificate has not been transferred by Maltby.   On the contrary he produced it in evidence at the trial of this cause, and it is now in the possession of this court.   The plaintiff is exposed to no peril, as the certificate is at its command.   The parties are all before the court, the rights of all can be protected, and justice be done. My conclusion is that the plaintiff's action must fail.

It further appears from the evidence that on the occasion of the loss of the certificate in question Maltby let Carpenter have in money the sum of $200.   Maltby claims that this advance was made to Carpenter in part consideration of the transfer of the certificate, while Carpenter claims that it was a separate transaction wholly independent of the loss of the certificate.   It is quite manifest to my mind that these transactions were so allied to each other, both as to the time and circumstance, as to lead irresistibly to the conclusion that this money was so advanced on account of the loss or transfer of the certificate; that it would not have been made but for Carpenter's misfortune.   To permit Carpenter to recover from Maltby the certificate, and secure its entire proceeds, without making restitution of the $200, would be unequal and unjust.

The judgment therefore is that plaintiff take nothing by its action; that the defendant pay over to Carpenter the sum of $3,300, and to Maltby the sum of $200, in satisfaction of its certificate of deposit.