McLachlin v. Barker.

H. M. McLACHLIN, Respondent, v. M. I. BARKER, Appellant.

Kansas City Court of Appeals, January 20, 1896.

1. Conversion: WHAT IS: DEMAND. Wrongful assumption of a right to control or dispose of property constitutes a conversion, and where the party in possession so treats it as to deny the plaintiff's right, the conversion is complete without any demand.

2. Principal and Agent: RATIFICATION: INSTRUCTION. An instruction as to agency and the ratification of an unauthorized act of an agent, is approved.

3. ———: EVIDENCE: FACTS AND CIRCUMSTANCES. The testimony in this case in the light of the attending circumstances tends to prove that one D., in receiving and disposing of plaintiff's horses, was acting as the defendant's agent; and judges no less than juries are not compelled to credit oral evidence which stands contradicted by established facts and circumstances.

4. ———: SCOPE OF AGENT'S AUTHORITY: THIRD PERSONS. As respects the mutual rights and dealings of principal and agent, the agent's authority may govern; but as respects the liability of principal to third persons for the acts and contracts of the agent, it is the apparent authority which controls.

5. ———: ADVANTAGES AND RESPONSIBILITY OF AGENT'S CONTRACT. One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act and takes it as his own with all of its burdens as well as with all of its benefits, and he must accept them or reject them as a whole, and the ratification goes back to the inception of the contract and. continues to its legitimate end.

6. Pleading: REPLY: DEPARTURE: AGENCY: RATIFICATION. Plaintiff alleged that defendant converted his horses. In his reply he alleges that plaintiff's agent converted the horses, and that plaintiff, with full knowledge, ratified the agent's act. Held, the reply was not a departure and that the agency may be established by prior authorization or subsequent ratification.

7. **Principal and Agent**: EVIDENCE: DECLARATIONS OF AGENT. Declarations, statements, letters, and catalogues of an agent made and issued while acting in the line and scope of his agency, are admissible against the principal.

8. **Set-off**: LIEN FOR FEED BILL. A feed bill for the horses involved in this suit for which a lien is claimed, is commented upon and found to be unworthy of serious consideration by reason of its indefiniteness and want of itemization.

*Appeal from the Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

### STATEMENT OF THE CASE BY GILL, J.

A fair understanding of this controversy can be had by consulting the pleadings in the case. The petition is for the recovery of the value of thirteen head of fancy harness horses (stallions, mares and colts) which were owned by plaintiff and which, it is alleged, defendant, in February, 1892, wrongfully converted to his own use. The answer consists, first, of a general denial, and further alleges that the horses mentioned and described in the petition were turned over to one Dell Barker, on January 13, 1892, who received and kept the same as agent for a company of persons consisting of said plaintiff and defendant and Dell Barker and one J. H. Burns and one John M. Gannt, who were about entering into an agreement to form a corporation to do business at Richlawn Farm, in Cass county, Missouri, where the said Dell Barker then resided. That said Richlawn Farm and all the feed thereon and all the fixtures, etc., belonged to the defendant. That the horses in controversy were delivered to Dell Barker on said farm, in pursuance to the agreement to form a corporation, as aforesaid, as a part of the assets of said corporation, and for which plaintiff was to accept stock in said corporation when formed.

That by direction and consent of plaintiff, Dell Barker sold a part of said stock, but defendant was not consulted and had no knowledge of such sale, and had nothing to do with said stock or the sale thereof. That afterward, in 1893, by mutual consent, the idea of forming the said corporation was abandoned by all the parties above mentioned. That from the thirteenth day of January, 1892, to the present time, said Dell Barker, acting for said company as aforesaid, had boarded, kept, fed, and pastured said horses, at the expense of this defendant and on his farm, using his feed and stables and pastures, at an expense of $750, an itemized statement of which is herewith filed and which said sum is a lien on said property and is due from plaintiff to defendant.

Wherefore defendant says that plaintiff is not entitled to the possession of said horses until said board and feed bill are paid, and he asks judgment for his costs and all proper relief.

The reply put in issue the new matter set out in the answer, except such as thereafter admitted; and then further states: "That for several years continuously, next prior to the commencement of this action, the said Dell Barker was the agent of the said defendant and had the entire control and management of the defendant's property and business in said county, and transacted, during said time, all of the defendant's business in said county, and in such capacity he, from time to time, purchased live stock and other kinds of personal property for the defendant and with the means and credit of the defendant, and from time to time sold and disposed of horses and other live stock and personal property belonging to the defendant and used and applied the proceeds thereof as he saw fit in so conducting the defendant's business; all of which he was

fully authorized by the said defendant to do, and all of which the defendant fully approved and ratified. That said Dell Barker never was the agent of any company or corporation which had any authority to keep, control, or manage, or sell any horses owned by the plaintiff, or any of the horses in controversy and mentioned in plaintiff's petition, and the plaintiff never was a member or stockholder of any such company, nor in any way concerned or interested in any such company. That in the management of said property and business of the defendant, and in the conduct of such agency, the said Dell Barker always used the following name and signature: 'Dell Barker, Ag't,' or 'D. Barker, Ag't,' and said business was advertised from year to year, and said property catalogued from year to year as follows, to wit: 'Richlawn Farm, Richlawn, Cass county, Missouri,' 'M. I. Barker, Prop., Dell Barker, Manager,' and some of said catalogues designated said Dell Barker as agent, and his son, I. A. Barker, as manager.

"That on or about January 13, 1892, the plaintiff, who had previously had many business transactions with the said defendant, through his said agent, Dell Barker, in relation to the business and property above mentioned, was induced by the representations of said defendant, made through said catalogues, profit statements, and circular letters of said defendant, and the statements of his said agent, to deliver to his said agent, all the horses in controversy aforesaid. Said representations were, in substance, that said property had become very valuable, and said business very successful and could be made much more so by incorporation, and that the defendant had decided to incorporate upon the basis of a capital stock equal in amount to the fair value of the property to be put into it, and that such incorporation should be immediately had under the laws of Missouri, and if the plaintiff would put the said

horses in controversy in as the property of such corporation, at their fair value, which was then agreed to be the amount stated in the petition, he should be paid therefor in the stock of said corporation equal to such amount. Relying upon such representations and believing the same to be true, he was induced thereby to deliver, and did deliver, the said horses to the defendant and his said agent, on or about the date aforesaid, for the purpose only of being turned over to such proposed corporation and receiving in payment therefor the said amount of said capital stock then about to be issued, and which would, on the basis and representations aforesaid, be of par value, at least.

"The plaintiff further says that if the said defendant did, at the time of said transaction, intend to organize such corporation, which was a matter entirely in his control, he very soon afterward abandoned such intention, and sold and disposed of a portion of the horses in controversy, without the consent or knowledge of the plaintiff, and converted the remainder thereof to his own use, and has never paid the plaintiff for any part of them, and he shipped the remainder of them, long prior to the commencement of this action, to his home in Kentucky where they still are.

"The plaintiff further says that the defendant's said representations as to the amount and value of his said property, and as to the profits of his said business, so made by him and his agent as aforesaid, were untrue. Wherefore the plaintiff asks judgment as prayed," etc.

The defendant, M. I. Barker, seems to have been a man of wealth and resided at Carrollton, Kentucky, near Cincinnati, Ohio. He owned a fancy stock farm in Cass county, near Greenwood, which he called "Richlawn Farm." He had also an impecunious brother, Dell Barker, who had a decided taste for breeding, handling, buying, and selling light-harness

horses. Defendant placed this brother, Dell Barker, in charge of "Richlawn," which, under him, and at defendant's cost, was improved by the erection of barns, sheds, etc., and also furnished all the means for stocking said farm with such fancy blooded horses as said Dell Barker thought proper to purchase. The evidence tends to prove that Dell Barker took charge of and conducted said farm as an agent of the defendant, with almost, if not quite, unlimited authority. He bought, sold, raised, and trained horses, and improved said farm, all the time acting and purporting to act as the agent and manager of M. I. Barker, the owner of said "Richlawn Farm." In the fall, winter, and spring of 1891–1892, the defendant, or his brother Dell—one or both—conceived the design of incorporating the enterprise under the name of "Richlawn Stock Farm Company," with a stated capital of $60,000—$50,000 of which was to be contributed by defendant, in that he would turn in his farm, stock, implements, fixtures, etc., for that amount, and the remaining $10,000 was to be secured from third parties; and to effect this, circular letters were sent to plaintiff and others setting out the condition of matters at "Richlawn," etc.

Plaintiff McLachlin resided at Paola, Kansas, and was the owner of thirteen horses (stallions, brood mares, and colts), and just such stock as was handled at "Richlawn." After some negotiation, by correspondence and otherwise, he (plaintiff) and Dell Barker, in January, 1892, agreed that this stock might be taken into the corporation about to be formed at the price of $2,300, to be paid for in twenty-three shares of the capital stock. On January 13, 1892, plaintiff sent the horses to "Richlawn" and received from Dell Barker a receipt for the same, signing his name thereto, "for Richlawn Stock Farm Co."

Articles of incorporation were prepared and signed

by the parties residing in Missouri and sent to defendant in Kentucky; and while he signed and returned them to Missouri, the defendant thereafter withheld the same from record and would not allow the matter of incorporating to proceed. The reasons assigned for this conduct was that he (the defendant) did not care to incorporate under Missouri laws; that he would prefer to organize under the laws of Kentucky, etc. At all events, the evidence substantially shows that defendant abandoned the matter of incorporation. Matters continued along in this uncertain state until the summer of 1893, about fifteen months after plaintiff's horses had been received at "Richlawn," when plaintiff went there and found that nine of the thirteen horses had been sold and the four remaining were shortly thereafter shipped to defendant's farm in Kentucky. After an unsuccessful effort to get a settlement, plaintiff sued the defendant, as before stated. The cause was tried by the court sitting as a jury, resulting in a judgment in plaintiff's favor for $2,474, and defendant appealed.

*R. T. Railey* and *Burney & Burney* for appellant.

(1) There was no conversion of the horses by defendant. If he is liable at all, it is because Dell Barker was his agent in receiving the horses and selling them without authority from plaintiff. His authority as agent was special and limited to that business alone. He was in no sense the general agent of defendant. (2) Agency can be established only by evidence of express appointment, previous course of dealing, ratification, or estoppel. *Alexander v. Rollins*, 84 Mo. 657; s. c., 14 Mo. App. 109. (3) There can be no ratification of an unauthorized act without full knowledge of all material facts. *Winsor v. Bank*, 18 Mo. App. 665;

*Middleton v. Railroad*, 62 Mo. 579; *Cravens v. Gilliland*, 63 Mo. 28; *Baldwin v. Burrows*, 47 N. Y. 211. (4) There was no ratification nor estoppel, because the acts of the agent were repudiated by defendant when they first came to his knowledge, and he received no benefit or profits from the transaction. *Bank v. Lumber Co.*, 54 Mo. App. 327; *State ex rel. v. Findley*, 101 Mo. 377; *Bank v. Metcalf*, 40 Mo. App. 494. (5) The acts and declarations of an agent, outside of court, are not admissible to prove his agency; nor to prove the extent of his authority. *Bond v. Railroad*, 62 Mich. 643; *Credit Co. v. Machine Co.*, 54 Conn. 357; *Bank v. Butchers*, 16 N. Y. 125; *Sax v. Davis*, 81 Iowa, 692; *Peck v. Ritchey*, 66 Mo. 114. One can be bound only by the authorized acts of another. He can not be held because another holds a commission and erroneously or falsely asserts that the acts are within it. Wood on Master and Servant, secs. 259, 262, 273; *Bank v. Railroad*, 13 N. Y. 599; 1 Parsons on Contract, 42; *Hamilton v. Berry*, 74 Mo. 176; *McDermott v. Railroad*, 73 Mo. 516; *Barker v. Railroad*, 28 S. W. Rep. 866; *Wheeler v. McGuire*, 86 Ala. 398; *State v. James*, 63 Mo. 570; *Bank v. Gray*, 63 Mo. 34; *Cupples v. Whelan*, 61 Mo. 586; *Winsor v. Bank*, 18 Mo. App. 665; *Hyde v. Larkin*, 35 Mo. App. 366. (6) Plaintiff can not recover the value of the four horses still on the farm, unless he made demand for them before the filing of this suit. And no demand was made. It was error, therefore, to refuse declaration of law number 2. *Weil v. Tyler*, 38 Mo. 545; *Nanson v. Jacob*, 93 Mo. 331; *Sewing Machine v. Betting*, 46 Mo. App. 417. (7) Defendant had the right to demand payment for the feed bill before allowing the horses to be taken away from the premises. *Heaps v. Jones*, 23 Mo. App. 617; *Neff v. Rhodes*, 20 Mo. App. 349; *Berry v. Tilden*, 70 Mo. 489. (8) The plea of ratification, in the reply, upon which the court

found for respondent, was a departure. *Matney v. Reed,* 40 Mo. App. 99; *Lanitz v. King,* 93 Mo. 513; *Hill v. Rich Hill, etc., Co.,* 119 Mo. 30.

*John C. Sheridan* and *Chas. W. Sloan* for respondent.

(1) Any assumption of a right to control or dispose of property is a conversion. *Warnick v. Baker,* 42 Mo. App. 442; *Allen v. McManagle,* 77 Mo. 478; *Ireland v. Horseman,* 65 Mo. 511; *Williams v. Wall,* 60 Mo. 318; *State v. Berning,* 74 Mo. 87; *Nanson v. Jacob,* 93 Mo. 340; *Norman v. Horn,* 36 Mo. App. 422; *Walsh v. Sichler,* 20 Mo. App. 374; 4 Am. and Eng. Encyclopedia of Law, 108–209; *Duskey v. Rudder,* 80 Mo. 400 (2) Refusal to give up property except at end of lawsuit is conversion. *Banking House v. Brooks,* 52 Mo. App. 364. Refusal to surrender on demand is evidence of conversion. 2 Greenleaf on Evidence [15 Ed.], sec. 644; *Cook v. Craig,* 18 Mo. App. 401. Any wrongful act which negatives owner's right is conversion *per se.* 60 Mo., *supra; Bank v. Metcalf, etc.,* 40 Mo. App. 544; *Holland v. Bishop,* 61 N. W. Rep. (Minn.) 681. (3) Dell Barker was clearly shown to be the agent of defendant with unlimited powers, and his acts are binding on defendant. *Mitchum v. Dunlap,* 98 Mo. 413; *Gibson v. Zeibig,* 24 Mo. App. 65; *Cummings v. Hurd,* 49 Mo. App. 139; *Rice v. Groffman,* 56 Mo. 434; *Cupples v. Whelan,* 61 Mo. 583; *Summerville v. Railroad,* 62 Mo. 391; *Johnson v. Hurley,* 115 Mo. 520; 1 Am. and Eng. 350, 351–354; 14 Kan. 408; 25 Kan. 534; 52 Kan. 495. (4) Defendant had no lien for keeping, boarding or training the horses in controversy; there was no evidence of any contract, express or implied, with the plaintiff to pay therefor. R. S. 1889, secs. 6730, 6731. There was no bill of items filed with defendant's answer, nor evidence offered by defendant to support such claim;

no proof was offered that such lien had ever been "established" as required by said last section. *Schultheis & Co. v. Nan*, 4 Mo. App. 593; *Burns v. Lidwell*, 6 Mo. App. 192; *State ex rel. v. Michael*, 7 Mo. App. 239; *Coates v. Acheson*, 23 Mo. App. 255; *Bast v. Ketchum*, 5 Mo. App. 433; *Hodo v. Benecke et al.*, 11 Mo. App. 393; *Case v. Fogg*, 46 Mo. 44. Said sections 6730 and 6731 should be strictly construed. 1 Jones on Liens, sec. 106; also the cases last cited; *Stone v. Kelley & Son*, 59 Mo. App. 218. Nor does section 6736, Revised Statutes, 1889, have reference to said sections 6730 and 6731. See Acts, 1887, p. 213. Sections 6732 and 6736, Revised Statutes, 1889, being embraced in last act cited should be construed in connection therewith. See, also, 13 Am. and Eng. Encyclopedia of Law, 593. (5) This cause having been tried by the court without a jury and there being substantial evidence on which to base its finding, that finding will be conclusive in this court. *Martin v. Nichols*, 54 Mo. App. 594; *Caruthers v. Williams*, 58 Mo. App. 100; *Magee v. Burch*, 108 Mo. 336; *Bray v. Adams*, 114 Mo. 486. Nor was defendant prejudiced by the refusal of the court to give the declarations of law asked by him, or by the giving of the declarations of law by the court of its own motion. (6) Dell Barker, defendant's general agent, sat in court at the trial but was not offered by defendant as a witness. This circumstance should raise all presumptions against defendant as to the vital points in controversy, 19 Am. and Eng. Encyclopedia of Law, 70; 1 Greenleaf, Evidence [15 Ed.], sec. 51a, and note; *Baldwin v. Whitcomb*, 71 Mo. 651–658; *Henderson v. Same*, 55 Mo. 559; *Cass Co. v. Green*, 66 Mo. 498; *Mabary v. McClurg*, 74 Mo. 575–591; *Leeper v. Bates*, 85 Mo. 224–228; *Bent v. Lewis*, 88 Mo. 491; *Werner v. Litsinger*, 45 Mo. App. 106, 108, 109. Failure to show a fact which rests in the knowledge of a party and

which is necessary to clear up the case authorizes the jury to draw inferences against him. *Bank v. Rubber Co.*, 77 Ga. 781; *Fitschen v. Thomas*, 9 Mont. 52; *Lake v. Nolan*, 81 Mich. 112; *Vanslyke v. Railroad*, 80 Iowa, 620; *Cole v. Railroad*, 81 Mich. 156; *Lothrop v. Adams*, 133 Mass. 477; *Lynch v. Peabody*, 137 Mass. 93.

GILL, J.—This case may be disposed of in less space than that taken in its statement. The really debatable questions are few. The evidence clearly establishes a conversion of plaintiff's property. He intrusted the custody of said thirteen horses to the party in charge of "Richlawn Farm," to be used in the payment of a stock subscription to a corporation which the owner of said farm said he was about to organize. The corporation was not organized; and instead of returning said property to its owner, as was proper, said custodian took and used the same as his own. Nine of the animals were sold within a very short time after they were received on the defendant's farm, and the other four were subsequently taken to and held by the defendant at his place in the state of Kentucky. "A wrongful assumption of a right to control or dispose of property constitutes a conversion. Indeed, any wrongful act which negatives or is inconsistent with the plaintiff's right is *per se* a conversion." *Williams v. Wall*, 60 Mo. 318–321. No demand was necessary (though the evidence tends to prove one), since in this case the party in possession of plaintiff's property clearly so treated it as to deny any right in the plaintiff. The conversion was complete without demand. *Lafayette Co. Bank v. Metcalf*, 40 Mo. App. 494–502, and cases cited.

The decisive question is one of agency. Plaintiff was clearly wronged in that Dell Barker received his stock for a certain purpose and thereafter converted it. Was said Dell Barker at that time, and in that

transaction, acting as the agent of the defendant?
Defendant's first instruction, given by the court with a
slight modification, indicates the theory upon which
the court tried the case.    It reads:

"In this case, the burden is upon the plaintiff to
prove by a preponderance of evidence the issues involved,
and unless he has so proved all the material allegations
of the petition, the verdict and judgment should be for
the defendant; unless, therefore, plaintiff has proved
by a preponderance of the evidence that Dell Barker at
the time he made arrangements to organize the pro-
posed corporation known as the Richlawn Stock Com-
pany, and negotiated with plaintiff and received the
horses in controversy, did so negotiate and receive
the same as the agent of defendant, M. I. Barker, with
full authority from the latter so to do, the verdict and
judgment should be for defendant, *unless he, said M.
I. Barker, afterwards ratified the acts of said Dell Barker
in assuming to act as his agent, if he did assume so to
act.*"    The court added the latter part shown by italics.

This declaration embodies all the law necessary to
a just disposition of the case.    It was correct as mat-
ter of law and the facts there required to be shown by
the plaintiff before he could recover, find ample support
in the evidence.    There was abundant evidence tend-
ing to prove that in this attempt to incorporate the
"Richlawn Farm," Dell Barker was defendant's agent,
clothed with full power and authority to secure the co-
operation of plaintiff and others.    The testimony, when
read in the light of the attending circumstances, tends
as well to prove that in taking plaintiff's horses, as a
pretended prepayment of stock subscription, and in the
subsequent sale and disposition thereof, said Dell
Barker was so acting with the defendant's knowledge
and assent; and this, too, in face of defendant's denial
on the witness stand.    Judges, no less than juries, are

not compelled to credit oral evidence which stands contradicted by established facts and circumstances.

From the evidence at this trial, the judge was justified in finding that Dell Barker was the general agent of the defendant, his brother, in the conduct and entire management of all business in any way connected with the "Richlawn Farm." As set out in our statement, defendant held out said Dell Barker as his *alter ego* in everything pertaining to that enterprise; he bought and sold stock in defendant's name; in defendant's name contracted for lumber, labor, and materials to improve the premises; hired hands and built houses; constructed a store for mercantile business, on defendant's land; and used his, Dell Barker's, own judgment and discretion in buying and selling goods and in conducting the same; executed notes in the name of the defendant, by himself as agent and manager—all, too, with defendant's knowledge and consent. In short, Dell Barker, had, apparently, unlimited and unrestricted power and authority to represent the defendant in everything pertaining to his Missouri interests, and to do anything in relation thereto without even consulting his principal. It makes, then, little difference, if defendant did, as is claimed, instruct this general agent only to receive *cash* in payment for the stock subscribed in the new corporation. The plaintiff and other parties knew nothing of this limitation, and could not know thereof by the exercise of ordinary care. They had a right to act on such appearances as were held out with defendant's knowledge. Mr. Mechem, in his admirable work on agency, thus states the law in such cases: "The authority of the agent, so far as third persons are concerned, is as broad, not only as the words of the principal, but as broad as his acts and conduct. In other phrase, it is, so far as third persons are concerned, as broad as the principal has made it *appear* to be.

As respects the mutual rights and dealings of the principal and agent, the *actual* authority may govern; but as respects the liability of the principal to third persons, for the acts and contracts of the agent, it is the *apparent* authority which controls. This apparent authority may be the result of his negligent act—of his omission, silence, or aquiescence. Every person is presumed by law to contemplate and intend the natural, proximate, and legitimate results of his own acts, and he can not avoid them by asserting that he did not really intend or contemplate them. If the principal leads third persons, acting reasonably and in good faith, to believe that his agent possesses a certain authority, then, as to them, he does possess it.'' Mechem's Agency, sec. 707, *et seq.* See, also, *Johnson v. Hurley,* 115 Mo. 513, 520; *Mitchum v. Dunlap,* 98 Mo. 418.

In addition to all this, even admitting that Dell Barker was, at the time, unauthorized to make the arrangement he did, and take the horses in payment of plaintiff's subscription, and yet there is convincing proof that defendant subsequently came into full knowledge of all the facts and accepted and ratified the conduct of his agent. In this connection, it must not be forgotten that Dell Barker was, all the time, insolvent; that, as defendant himself testified, his brother had no property; that everything in the place belonged to him, the defendant. Defendant resided in Kentucky; he corresponded frequently with Dell, his agent, in charge of the farm and property at ''Richlawn,'' Missouri; instructed Dell as to the matter of getting persons interested in the proposed incorporation, etc., and is it not almost incredible that of so large a transaction as this had with plaintiff, in January, 1892 (whereby thirteen fine horses were added to the herd), the defendant was never informed until more than a year thereafter. Most of these horses, too, were taken to

Mexico, Missouri, a few weeks after they were sent by plaintiff to Richlawn, and sold, and the money, it seems, went into the assets of this farm, and yet of this defendant says he had no knowledge. Printed catalogues of the horses on "Richlawn Farm" were gotten out during the year 1892 and sent broadcast over the country. These pamphlets named and advertised some of these identical horses which came from the plaintiff, called them by name and stated they were "bred by H. M. McLachlin, of Paola, Kansas," but owned then by the owner of Richlawn Farm. Add to this the admitted fact that in the year 1893, after defendant, according to his own statement, had been out to Missouri and was fully posted as to the entire transaction between Dell Barker and the plaintiff, the four horses remaining undisposed of were, on his, defendant's, order, sent to Kentucky and turned into defendant's pastures, and he had them there at the institution of this suit, and it would seem the defendant can well be held on the theory of ratification alone. "It is a rule of universal application that he who would avail himself of the advantages arising from the act of another in his behalf, must also assume the responsibilities. * * * One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act and takes it as his own with all its burdens as well as all its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole." Mechem's Agency, sec. 148. Defendant seeks to escape this by alleging that he had no knowledge that these horses, which were shipped to and received by him in Kentucky, came from the plaintiff. This is another of his statements the truth of which the court might well have doubted.

But it is claimed that plaintiff's reply, pleading a

ratification, is a departure from the cause of action set up in the petition. We think not. Proof that a party subsequently ratified a prior unauthorized act of one assuming to be his agent, has the same effect as if the evidence established agency at the time the act was committed. "By ratifying the unauthorized act, the principal assumes and adopts it as his own  *  *  *, it goes back to its inception and continues to its legitimate end.  *  *  *  The ratification operates upon the act ratified precisely as though the authority to do the act had been previously given." Mechem, Agency, sec. 167. Plaintiff, now, in his petition, alleges that defendant took and converted his, plaintiff's, horses to his, defendant's, own use. He makes this allegation good by showing that the defendant did the act in person, or that it was committed by his, defendant's, agent; *qui facit per alium, facit per se.* And this agency may be established in either of two ways—that of prior authorization, or subsequent ratification.

The court properly refused defendant's proposed instruction excluding all "declarations, statements, letters, and catalogues of Dell Barker." All these declarations, statements, letters, and catalogues were uttered, written, and published by said Dell Barker while acting in the line and scope of his agency, and were, therefore, properly treated as those of his principal.

As to the suggestion that defendant ought to be allowed compensation for the feed bill of the horses while he kept them, it is sufficient to say, that there is nothing in the pleadings or evidence to justify its serious consideration. The answer, it is true, alleges that Dell Barker, acting for said company, had boarded, kept, fed, and pastured said horses at an *expense* to the defendant of $750 and for which, he says, a lien existed. But there is no statement of what this "ex-

pense" consists—no itemized charges, nor indeed any evidence as to what was done for the stock; what, how much, or how long they were fed; how much pasturing furnished; or as to what any of these things were reasonably worth, if they had been supplied. But, in addition to all this, the whole evidence shows conclusively that the parties never intended that plaintiff should pay for keeping the stock. Such claim, whether for a lien, or an ordinary set-off, must have for its basis a contract express or implied.

In our opinion the judgment is clearly for the right party and ought to be affirmed. It is so ordered. All concur.