SWOFFORD BROTHERS DRY GOODS COMPANY, Respondent, v. BANK OF BLUE MOUND, Appellant.

### Kansas City Court of Appeals, May 29, 1899.

1. **Banks and Banking**: GUARANTY: CASHIER'S POWER. A bank, nor its cashier has any power or authority to bind the corporation by way of guaranty or a mere accommodation indorsement.

2. ———: ACCEPTING BENEFITS OF CONTRACT: AGENCY: RATIFICATION. One who avails himself of the advantages arising from the act of another in his behalf must assume the responsibilities flowing from such act. And where two creditors of a common debtor agree with such debtor to turn his assets to one of such creditors, a bank, on condition that it pay both creditors, such bank on accepting the assets is bound and must pay as agreed.

3. **Trial and Appellate Practice**: QUESTION AS TO ACCEPTING ASSETS: JURY QUESTION. Where the question as to whether a debtor accepted assets of his creditor under an agreement between them with another creditor, or accepted them under a subsequent agreement, is a jury question; and where submitted on proper instruction the verdict is binding on the appellate court.

*Appeal from the Jackson Circuit Court.*—HON. J. W. HENRY, Judge.

AFFIRMED.

C. B. AMES for appellant.

(1) Mr. Morse in his work on Banks, says that it is of course, irregular and illegal for a bank to indorse paper for accommodation, and that such indorsement is only good when it is done by an officer authorized to indorse the bank's paper and taken by a person for value, who has had no notice of its being for accommodation. 1 Morse on Banks [3 Ed.], par. 98, p. 208; cf. par.158, p. 326; par. 156 p. 324; Bank v. Bank, 95 U. S. 557; 1 Morse, par. 65; cf. 2 Morse, par. 745, et seq.; Seligmen

v.Bank, 3 Hughes 647; 1 Morse, par.127b; Norton v.Bank,61 N.H.589; Bank v. Bank, 1 Doug. (Mich.) 474; Rahn v. King, 16 Kan. 277; Ehrgott v. Bridge Co., 16 Kan. 486; cf. Gen. Statutes of Kan. 1897, p. 695, par. 23, chap. 66; Bank v. Bank, 19 N. Y. 312; Bank v. Bank, 3 Kernan 309; cf. Leavitt v. Palmer, 3 Comst. 33; Bank v. Bank, 16 N. Y. 128, 129; 30 Barb. 421; 26 Barb. 230, 568; Winsor v. Bank, 18 Mo. App. 665, 673, 674; 2 Beach, Mod. Law Contract, par. 990, p. 1258; Mining Co. v. Mfg. Co., 62 Fed. Rep. 356; General Statutes of Kansas, 1897, p. 123, par. 29; p. 695, par. 23, chap. 66; Asher v. Sutton, 31 Kan. 286; Glenn v. Lehnen, 54 Mo. 45; Pfeiffer v. Kingsland, 25 Mo. 66; Howard v. Jones, 13 Mo. App. 596; Osborne & Co. v. Lawson, 25 Mo. App. 549; Macfarland v. Hime, 127 Mo. 327. And the suit being against defendant as guarantor no recovery can be had on any other theory. Perry v. Barret, 18 Mo. 140. (2) Under the pleadings plaintiff was certainly not entitled to recover unless upon the guarantee. The original declaration filed by the plaintiff was a plain simple suit on the guarantee. (3) Notwithstanding this however, let us examine the theory which the plaintiff seemed to advance. The evidence certainly could not have established authority of the cashier to guarantee, or ratification of the guarantee by the bank, and the plaintiff was shrewd enough to understand this, so it introduced a mass of evidence having no relation to the guarantee, the crux of the controversy, and endeavored to bring in alien matter. (4) Swofford, claiming as he does, that there was such an agreement, and claiming as he does that he knew of such an agreement, then in the face of these contentions taking the written guarantee of the mercantile company's debt, shuts the door of novation in his face, so that there is no novation, can not be a novation and he must stand or fall upon his choice of that day, the written guarantee. Green v. Estes, 82 Mo. 337; Howard v. Coshow, 33 Mo. 123; Edgell v. Tucker, 40 Mo. 528. (5) Nor does

the suit by Swofford against the bank operate as a release of the mercantile company. Briscoe v. Callahan, 77 Mo. 134; 1 Beach on Contracts, par. 787. (6) The court erred in refusing the defendant's request for a peremptory instruction.

ELLIS, REED, COOK & ELLIS for respondent.

(1) Appellant seeks in his brief to restrict the review of plaintiff's right of recovery to the evidence adduced at the first close of plaintiff's case. In this he is wrong. The case having been heard upon evidence pro and con must now be reviewed upon the whole record. Any rights or claims he might have urged, had he made and stood upon a demurrer to the evidence, are waived. Jennings v. Railroad, 112 Mo. 268; Hilz v. Railway, 101 Mo. 36; McPherson v. Railroad, 97 Mo. 253; Guenther v. Railroad, 95 Mo. 286; Felix v. Bevington, 52 Mo.App. 403; King v.Oil Co., 2 Mo. Appellate Rep. 355; Simpson v. Kimberlin, 12 Kan. 578, 588; Railroad v. Doyle, 18 Kan. 58. (2) The burden was, of course, upon the defendant to make out its affirmative defense of a separate contract, and it was for the jury to sift the story and disbelieve it if they saw good reason so to do. They could not be compelled to believe defendant's witnesses, even though not directly contradicted. Schroeder v. Railroad, 108 Mo. 322; Wolff v. Campbell, 110 Mo. 114, 120, and cases cited; King v. Oil Co., 2 Mo. App. Rep. 357, ad fin; Steamboat v. Matthews, 28 Mo. 248. (3) The law says a party can not claim the benefits and fruits of an agent's act, and disclaim the burdens imposed thereby. The principal must repudiate or perform. He can not claim and disaffirm in the same breath. Mechem Agency, sec. 148; Parsons v. Inv. Co., 64 Mo. App. 32; McLachlin v. Barker, 64 Mo. App. 511; State ex rel. v. Harrington, 100 Mo. 170, 176; Nichols v. Kern, 32 Mo. App. 1, 7; Bank v. Lumber Co., 54 Mo. App. 327; Fahy v. Grocer Co., 57 Mo. App. 73, 77. (4) Closely akin to the

foregoing, and fundamental to a correct ruling upon the case, is the further proposition that the doctrine of *ultra vires*—acts not binding upon a corporation because beyond its charter powers—can not be invoked as a shield by a corporation, while it still holds the fruits and benefits of the challenged act, and full performance has been made. Various grounds are assigned, a favorite one being estoppel. 2 Morse, Banks and Banking [2 Ed.], sec. 734, 750; Winscott v. Guar. Co., 63 Mo. App. 367; Grohmann v. Brown, 68 Mo. App. 630; Weyrich v. Gr. Lodge, 47 Mo. App. 391; Lysaght v. St. L. O. S. Ass'n, 55 Mo. App. 538; Glass v. Brwg. Co., 47 Mo. App. 639; Welsh v. Brewing Co., 47 Mo. App. 608.

GILL, J.—At the dates hereinafter mentioned, Swofford Brothers, as a corporation, were engaged in the wholesale dry goods business at Kansas City, the Cozad-Fisher Mercantile Company, a corporation, was doing a retail business at Blue Mound, Kansas, and the defendant was a banking institution at said Blue Mound. In December, 1897, the Cozad-Fisher Company owed Swoffords, for goods purchased, about $1,700. At the same time the defendant bank held certain notes which had been given to it by the different stockholders of the Cozad-Fisher Company at its organization about five years before, the stockholders then having borrowed from the bank money to pay their subscriptions.

This was the condition of things when, in the latter part of December, 1897, Swoffords sent Ellis, their attorney and agent, down to Blue Mound to look after their claim against the Cozad-Fisher Company. On arriving there Ellis found the company was about closing out its business by a sale of the stock of goods to one Stephenson. Upon a conference then held with the officers of the failing mercantile company and Jennings, the cashier of the defendant bank, it was then, according to Ellis' testimony, agreed between the Cozad-Fisher

Company, Ellis representing Swoffords, and Jennings for the bank, that the sale of the goods to Stephenson should be carried out, that the real estate and $2,300 in notes which the latter was to give for the goods should be turned over to the bank, and that out of such proceeds the bank would first settle the claim of the Swoffords and the balance be appropriated to the bank's claim against the Cozad-Fisher Company. And in pursuance of this, Jennings, the defendant's cashier, at once indorsed the bank's written guaranty on Swofford's note and account against the Cozad-Fisher Company, by which said bank agreed to pay Swofford's entire claim on or before January 20, 1898, which was three weeks after said agreement.

Thereupon Ellis returned to Kansas City, feeling, doubtless, that his client's demand against the Cozad-Fisher Company was secured. But when he (Ellis) returned to Blue Mound on January 22, with the view of collecting the $1,700, he found that the bank officials had changed their policy. The Stephenson purchase had been consummated, the real estate and entire proceeds of the sale had been taken by the bank, but the president and new cashier (who had been chosen to succeed Jennings the former cashier) repudiated the arrangement made in December, and claimed the entire assets on an alleged subsequent and independent contract with the Cozad-Fisher Company, by which the bank was to accept the goods in full satisfaction of its claims against the stockholders which had been in form indorsed by the mercantile company. Thereupon this suit in attachment was brought at Kansas City against said Bank of Blue Mound, resulting at the trial in a verdict and judgment in plaintiff's favor for the amount of its claim, and defendant appealed.

I.   If this case was to be determined on the bare question of the authority of the defendant's cashier to bind it by the written guaranty indorsed on the evidences of indebtedness held by the Swofford Company against the Cozad-Fisher Company, conceding

BANKS and banking: guaranty: cashier's power.

it to be a mere accommodation indorsement, then we should have no hesitancy in holding with the defendant. For as we have lately decided, neither the bank nor its cashier had any power or authority to bind the corporation by such an instrument. Bacon, Dawson & Co. v. Assignee, etc., 2 Mo. Appellate Rep. No. 7, p. 446, and authorities there cited.

But plaintiff's right of recovery rests on no such narrow ground; its evidence tends to prove a case more comprehensive in its scope. It is a case where two creditors of a common debtor (if we concede defendant bank to be a genuine creditor) meet with the debtor, and it is there mutually agreed that one creditor shall take the entire assets of the insolvent debtor, collect and pay the claim of the other creditor and appropriate the remainder to the satisfaction of its own. It's a case where that creditor gets the property in pursuance of that arrangement, and then repudiates its obligation to the other creditor and seeks to absorb and appropriate the entire fund to its exclusive use. The question is, can that be done? We think not. Regardless of the authority of the defendant's cashier to bind it by the written guaranty, it is quite clear that it can not take advantage of the cashier's arrangement or contract, even though made without authority, to the extent of getting possession, title and control of the assets, and then repudiate the balance of the obligation. "It is a rule of universal application that he who would avail himself of the advantages arising from the act of another in his behalf, must also assume the responsibilities. * * * One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act and takes it as his own with all its burdens as well as its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole." McLachlin v. Barker, 64 Mo. App. 511; Mechem on Agency, sec. 148. "The principal can not accept and appropriate the fruits and benefits of a

*[margin note: ——: accepting benefits of contract: agency: ratification.]*

contract made by the agent, and then controvert the authority of the agent to bind him by the agreement." Fahy v. Grocer Co., 57 Mo. App. 73, and cases cited.

The defense is based on the theory that the bank did not take the assets of the failing mercantile company under the tripartite agreement entered into by the cashier, Ellis (plaintiff's agent), and the mercantile company, but that such assets were taken under an agreement subsequently made between that company and the bank's president and succeeding cashier; and moreover, that when said last contract was entered into said bank officers knew nothing of the prior arrangement made by Jennings, the former cashier. And there was evidence in defendant's behalf tending to prove this to be a fact. But this issue was squarely submitted to the jury and they found the plaintiff's theory to be the correct one—that the assets were taken and appropriated by the defendant under and in pursuance of the agreement first made. And notwithstanding the testimony thus offered, it is not surprising the jury found as they did. It is hardly comprehensible how Jennings could have so agreed in behalf of the bank without the knowledge and approbation of all defendant's officers; and when the physical facts and circumstances are considered the jury was justified in the inference that the first arrangement was fully understood, as the negotiations progressed, and that the property was turned over to the bank with the distinct understanding that the three-sided settlement of December should be complied with. The trial court fairly submitted the alternative of these two propositions, directing the jury to find for the plaintiff or defendant according as the truth was found to be; and as the verdict was in favor of plaintiff, it does not become us to disturb the finding.

The foregoing settles every material question in the case. We have examined in detail the entire evidence, the court's

*Margin note:* TRIAL and appellate practice: question as to accepting assets: jury question.

rulings thereon, as well as the instructions given and refused and find no substantial error.

On the facts found by the jury, the judgment is manifestly for the right party and will be affirmed.  All concur.