## HIGGINBOTHAM, Appellant, v. McGREADY.

**Division One, June 20, 1904.**

1. **GAMBLING: Note in Hands of Innocent Purchaser.** The defendant borrowed money from an associate in a poker game, and gave his checks in payment thereof, and used the money thus borrowed to buy chips in order that he might continue in the game then in progress. Afterwards he gave the note in suit in exchange for those checks, and the note was sold to plaintiff, for value before maturity, who purchased without any knowledge of the note's consideration. *Held,* that the statutes (secs. 3426, 3427, R. S. 1899) are not a bar to a recovery by plaintiff. A note in the hands of an innocent purchaser for value does not fall under the ban of those statutes. *Held,* also, that the note was not made under the circumstances condemned by the statute.

2. ———: ———: **Purpose of Statute.** Those statutes were not intended for the protection of gamblers and their class, but were adopted as an extreme measure to put a stop to gambling. They were not intended to enable gamblers to victimize innocent purchasers by inflicting a further wrong upon persons who purchase their notes given in settlement of gambling transactions without any knowledge of the character of such notes.

3. ———: ———: **Statutes Constitutional.** The said statutes are constitutional. There is no vested right in the assignee of a note given in settlement of a gambling contract or in any other citizen, to buy, purchase or receive any kind of an obligation freed from the right of the maker thereof to interpose any defense he may have against its enforcement or collection.

Appeal from Washington Circuit Court.—*Hon. Frank R. Dearing,* Judge.

REVERSED AND REMANDED.

*James F. Green* for appellant; *Wm. S. Anthony* and *C. H. Richeson* of counsel.

(1) There was some evidence tending to prove that the note was given, after the poker game was over, to

redeem defendant's checks for money loaned defendant. Where there is any evidence tending to prove an issue, it is error to refuse to submit the same to the jury. Hadley v. Orchard, 77 Mo. App. 141; Pauck v. Dressed Beef Co., 159 Mo. 467; Gannon v. Light Co., 145 Mo. 502.  (2)  If section 3427, Revised Statutes 1899, makes a negotiable note given for a gaming consideration uncollectible in the hands of an innocent holder for value before the maturity of the note, then it places such note upon a different footing from other commercial paper and denies the holder the rights which belong to other owners of the same character of property.  The section is, therefore, unconstitutional and void.  State ex rel. v. Ashbrook, 154 Mo. 375; State ex rel. v. Washburn, 167 Mo. 680; State v. Thomas, 138 Mo. 95.  (3) The failure of defendant to institute an action to avoid the payment of the note within three months from the date of said note precludes him from making any defense to plaintiff's suit.  Sec. 3432, R. S. 1899; Connor v. Black, 132 Mo. 155; Humphrey v. McGee, 13 Mo. 313; Ryan v. Judy, 7 Mo. App 74.

*E. M. Dearing* and *Dinning & Hamel* for respondent.

(1)  The only question in this case for this court to determine, as we understand it, is, did the Legislature of the State have the power to enact section 3427, Revised Statutes 1899?  2 Beach, Mod. Law of Cont., secs. 1442, 1443, 1480, 1482, 1483, 1484, 1486, 1492; Davis v. Seeley, 71 Mich. 209; Edwards v. Dick, 4 Barn. & Ald. 212; Towne v. Rice, 122 Mass. 67; City of Aurora v. West, 22 Ind. 88; Town of Eagle v. Kohn, 84 Ill. 292; Cowing v. Altman, 71 N. Y. 435; Edwards, Bills and Notes (2 Ed.), p. 349; Woolfolk v. Duncan, 80 Mo. App. 421; Williams v. Wall, 60 Mo. 318; Kitchen v. Greenabaum, 61 Mo. 110; Buckingham v. Fitch, 18

Mo. App. 91. (2) Ballard, the payee of the note in question, if he had not made a qualified indorsement, would have been liable to the plaintiff, but he endorsed the note "without recourse," hence, plaintiff is without remedy. (3) If the note in question grew out of a gambling transaction, a court of justice will not enforce it, and if the contract in fact be only connected with the illegal or immoral transaction and growing out of it, though it be in fact a new contract, it is equally tainted. Hayden v. Little, 35 Mo. 418; Gwinn v. Simes, 61 Mo. 335; Sumner v. Summers, 54 Mo. 110; Kitchen v. Greenabaum, 61 Mo. 110; Buckingham v. Fitch, 18 Mo. App. 91; Bick v. Seal, 45 Mo. App. 475; Ryan v. Judy, 7 Mo. App. 75; Hill v. Johnson, 38 Mo. App. 383; Hatch v. Hanson, 46 Mo. App. 323. There is no distinction between a contract that is immoral in nature and tendency, and therefore void as against public policy, and one that is illegal and prohibited by law. Woolfolk v. Duncan, 80 Mo. App. 427. (4) It is insisted by appellant in point 1 of his brief that "there was some evidence tending to prove that the note was given, after the poker game was over, to redeem defendant's checks for money loaned defendant." There was no substantial evidence tending to prove that this note was given for any other consideration than a gambling debt.

ROBINSON, J.—This is an action by the plaintiff, endorsee of a promissory note for $500, against defendant, the maker thereof. By answer, the defendant interposed the following as his defense to plaintiff's action:

"That the sole and only consideration moving to the execution of the note in plaintiff's petition described, was money lost by this defendant at a game of chance, commonly called poker, played by means of a gambling device, to-wit, a pack of cards, which said game was played on the day and on the day before the execution of said note, to-wit, January 22, 1900, at the

city of DeSoto, Jefferson county, Missouri. Defendant further avers that at the said game of poker at which defendant lost the money for which said note was executed, he (defendant) and D. Ballard, the payee of said note, together with others, played at said game of chance, and that said money was won by the said D. Ballard and the other parties who played at said game of chance; that for the said money so won by the said D. Ballard and the other parties who played at said game of chance, defendant executed to the said Ballard the note sued on herein.

"Further answering plaintiff's petition, defendant denies each and every allegation therein contained, not in this answer expressly admitted.

"Wherefore, the premises considered, the defendant avers that the said note is void and of no effect in law."

To this answer the plaintiff filed the following reply:

"Now comes the plaintiff in the above-entitled cause and for replication to the answer of the defendant in the above-entitled cause denies each and every allegation of new matter in said answer contained.

"Further replying to said answer, plaintiff says that the note sued on in this case was assigned, transferred and delivered to this plaintiff for value before the maturity of said note as averred in plaintiff's petition and that plaintiff was the holder of said note, for value without any notice as to the consideration of said note. And plaintiff avers that, if it were true (which plaintiff denies) that said note was given for a gambling transaction, as averred in defendant's answer, the plaintiff, being a holder for value of said note before the maturity thereof, is entitled to recover the value thereof, and the plaintiff avers that section 3427 of the Revised Statutes of 1899, in so far as said statute authorizes such defense of want of consideration as against this plaintiff, is a violation of section 15 of

article 2 of the Constitution of the State of Missouri in that the same impairs the obligation of the contract between the payee of said note and this plaintiff, and further that said section of the statute is violative of section 1 of article 14 of amendments to Constitution of the United States, and of section 10, article 1 of the Constitution of the United States.

"And having fully replied, plaintiff prays judgment as in his petition heretofore prayed."

At the conclusion of the testimony, the plaintiff asked the court to give to the jury the following instructions:

"1. The court instructs the jury that if you find from the evidence that defendant executed the note sued on and delivered the same to D. Ballard for money loaned defendant by said D. Ballard, and that said D. Ballard for value transferred said note to plaintiff before the note became due, and that the note has not been paid, then you will find the issues for the plaintiff for the amount due on the note, although you may further find that defendant borrowed said money and used it afterwards for gambling purposes.

"2. The court instructs the jury that if you find from the evidence that plaintiff purchased the note sued on and paid value for it before its maturity and that he so purchased it without any knowledge that it was given to Ballard for money lost at a poker game, then you will find the issues for the plaintiff, although you may further find the note was given for a gambling debt, as section 3427 of the Revised Statutes of Missouri 1899, is unconstitutional and void in such cases."

These instructions the court refused, and at the instance of defendant, instructed the jury that under the pleadings and evidence plaintiff was not entitled to recover, and directed a verdict for defendant. In due time the plaintiff filed his motion for a new trial, the overruling of which led to the prosecution of his appeal,

and the case was sent to this court on account of the constitutional question raised.

As the case was disposed of by peremptory instruction of the trial court directing the jury to return a verdict for the defendant, it will become necessary only to briefly outline the testimony given by plaintiff and one of his witnesses, which was to the effect that plaintiff was an innocent purchaser for the value of the note in suit from the payee thereof before its maturity; that plaintiff had no information or knowledge whatever before or at the time he purchased the note that it had been given on account of a gambling debt, or that it was made as the result of money won or lost at any game or gambling device. By way of rebuttal the plaintiff called as a witness the original payee of the note, Dave Ballard, and since upon his testimony the result of this appeal will be determined, we have thought best to present that testimony in the precise language of the witness, as follows:

"Q. Your name is Dave Ballard? A. Yes, sir.

"Q. You live in DeSoto? A. Yes, sir.

"Q. I show you a note, Mr. Ballard, made payable to you, signed by F. E. McGready, dated January 22, 1900, for five hundred dollars, payable to you or bearer and by you endorsed to Judge Higginbotham, the plaintiff, and ask you if that note was delivered to you by Mr. McGready? A. Yes, sir.

"Q. That was for money you had given Mr. McGready for his checks? A. Yes, sir.

"Q. How much? A. Six hundred dollars.

"Q. What was it furnished in? A. Cash.

"Q. You loaned him six hundred dollars? A. Yes, sir.

"Q. This note was given for six hundred dollars? A. No, sir.

"Q. Did you say you loaned him any money? A. Yes, sir, I loaned him six hundred dollars.

"Q. Did you loan it all at one time? A. No, sir.

"Q. How much at a time? A. I loaned him fifty dollars and he gave me a check signed by F. E. Mc-Gready & Son, and then he took that up. He gave me five hundred dollars worth of them that night.

"Q. You say you took up five one hundred dollar checks? A. Well, some of them might have been for fifty dollars; but he took up checks to the amount of five hundred dollars and one I got cashed at the bank for one hundred dollars.

"Q. You mean to say you loaned him six hundred dollars? A. Yes, sir.

"Q. He gave you a check signed F. E. McGready & Son? A. Yes.

"Q. Is that a firm doing business? A. Yes, sir.

"Q. These checks that he gave you, you furnished him money for? A. Yes, sir.

"Q. Cash? A. Yes, sir."

Cross Examination by Judge Dinning.

"Q. You say, Mr. Ballard, you loaned Mr. Mc-Gready that night six hundred dollars? A. Yes, sir.

"Q. What did he do with it? A. Bought poker chips with it.

"Q. What did you loan him that money for? A. Because he wanted it.

"Q. You expected to get it back as soon as you could? A. Of course, if I could win it.

"Q. You say you loaned him money at the poker table? A. Yes, sir.

"Q. You counted him out the money and he would buy chips from Huskey? A. Yes, sir.

"Q. Didn't you loan him the money for the purpose of buying poker chips? A. He could do as he pleased.

"Q. You regard his note as good? A. Yes, sir.

"Q. Why did you trade if off at such a discount when it was drawing eight per cent interest? A. Because I needed the money.

"Q. Why did you sign it this way? A. So that Mr. Higginbotham couldn't hold me for it. And he was willing to take it that way.

"Q. They knew it was a gambling note? A. I don't know anything about that; I loaned him the money and he gave me the note for it.

"Q. You loaned him the money and then won it back? A. There was other people in that game; there was Huskey and Brit.

"Q. Brit stayed there until he got his eyes open and quit? A. He quit the game winner.

"Q. Now Mr. Ballard, why did you have 'or bearer' put in there? A. To make it negotiable.

"Q. Isn't it a fact that as well known as Mr. McGready is, his paper can be cashed any day in DeSoto. A. I don't know.

"Q. Don't you know that his note is regarded as absolutely good? A. I don't know whether it is or not. I went to the German American Bank and they said they didn't want any of his paper.

"Q. Who told you that Judge Higginbotham would buy it? A. You told me, you thought he would buy it. The Peoples' Bank said they didn't want it.

"Q. Can you prove that? A. Yes, sir.

"Q. Why haven't you got the people here? A. They can be got here. They told me they didn't want it.

"Q. Didn't they tell you they didn't want this paper? A. Didn't make any reference to that paper; said they didn't want any of his paper.

"Q. When did you put this stamp on there? A. When it was written.

"Q. Who did it? A. I put it on there.

"Q. Did this Mr. Graham tell the truth about everything he told here? A. I think he did.

"Q. Those checks, what became of them? A. He tore them up.

"Q. You loaned him the money? A. Yes, sir. It was just this way: after the game was all over Mr. Mc-Gready says to me, 'I have overplayed myself, Mr. Ballard, in this game,' and he said, 'I can fix this inside of a year, and if you don't care I would like for you to carry me for a year. You can give me those checks and I will give you my note for five hundred dollars.' He wanted me to take his note for five hundred dollars, and I told him I would if he would make me a negotiable note, and Mr. McGready wrote this note and I put the stamp on it.

"Q. You let him have five hundred dollars? A. I got his check before I let him have the money.

"Q. What did he write them with? A. He wrote these checks with a lead pencil.

"Q. Signed them F. E. McGready & Son? A. Yes, sir.

"Q. What bank? A. Peoples' Bank.

"Q. Did he take up these checks before he left the room and give you this note? A. No, sir. It was written down stairs.

"Q. You gave him the checks back down stairs after he gave you the note? A. Yes, sir.

"Q. Those checks were never presented for payment? A. No, sir."

This case was tried and disposed of by the circuit court as if its facts, as presented by the plaintiff, brought it within the operations of sections 3426 and 3427, Revised Statutes 1899, which provide:

"Sec. 3426: All judgments by confession, conveyances, bonds, bills, notes and securities, when the consideration is money or property won at any game or gambling device, shall be void, and may be set aside and vacated by any court of competent jurisdiction, upon suit being brought for that purpose by the person so confessing, giving, entering into or executing the same, or by his executors or administrators, or by any

creditor, heir, devisee, purchaser, or other person interested therein.

"Sec. 3427: The assignment of any bond, bill, note, judgment, conveyance or other security shall not affect the defense of the person executing or confessing the same."

That plaintiff was a purchaser of the note in suit for value before its maturity, and that he took it in absolute ignorance of the consideration that resulted in its execution, are facts about which there is no dispute or conflict in the testimony. And for the sake of this discussion, it must also be conceded that the note in suit was given as the result of money borrowed by the defendant from the witness Ballard, during a game of poker played by said defendant with said Ballard and others, to enable defendant to purchase chips or checks (which are but a convenient representation of money used as the stake put up or deposited in lieu of money upon the table before the players engaged in gambling).

Under this state of the facts then, was the note in suit of the character condemned by section 3426, above, as void, and subject to be vacated by any court of competent jurisdiction upon suit brought for that purpose, by the person executing the same or by his executor, administrator, creditor, etc., and was it of such a character as to carry its infirmity into the hand of an innocent holder by assignment, as provided in section 3427, supra?

That the note in question would not have been enforcible, as a binding obligation in the hands of the payee against the maker may be quite true, but from this, it by no means follows as a necessary corollary, that it is also non-enforcible against the maker, in the hands of an innocent holder for value. Between notes and other negotiable instruments made void *ab origine* by some positive statute, and those that may be found to have been made contrary to the rules of good morals simply, when they (the latter) have reached the hands

of an innocent holder for value, the courts have ever made a distinction. In the first instance, the note or contract being void by a positive declaration of law to that effect, can never thereafter be vitalized, purged of its illegality, or given new life by the hand into which it may thereafter fall, however innocent that hand may be of the corrupting and contaminating cause that led to its creation, but in the latter instance, the instrument is voidable only, and will be non-enforcible or enforcible as the court will withdraw its aid to one of the guilty participants to its making, or will give its aid to him or her into whose hands the instrument has come through the regular channels of business or trade in ignorance of its tainted inception.

Viewing the transaction that led up to and resulting in the making of the note in question, as its history is given by the witness Ballard, we are unable to see why this note in the hands of an innocent indorsee for value should fall under the ban of a statute levelled at notes and similar instruments given in settlement for money or property won at gambling.

While feeling that as little assistance as possible should be given by courts to compel the enforcement of gambling transactions, or of contracts in any way tainted by immorality as between the guilty participants thereto, yet we have no disposition or authority to go one step in advance of the legislative fiat, denying protection to the innocent holder for value of commercial paper put upon the market by gamblers. If the gambler will insist on closing up his unsuccessful transactions at the gambling table, by issuing his negotiable promissory note to his more successful brother gambler, thereby enabling him to fleece some innocent third party through a further wrongdoing, he ought not to expect from the hands of the court, as against an innocent sufferer from his act, other than the most rigid con-

struction of the statute he invokes, not intended for
the special benefit of him and his class, as he seems
to think, but adopted as an extreme expedient solely in
an effort to put a check upon and to prevent as far as
possible the practice of his crime (gambling). What
then is the meaning of this statute, and is the note in
suit, which defendant now seeks to defend against,
within its letter or spirit?

Though the statute in question is not as clearly
worded as it might have been made, it is quite evident
that the Legislature did not mean by it to declare that
all notes thereafter issued in consideration of money
borrowed or received that may have at some time been
won at some game or gambling device should be void,
or that money or property won at gambling should
thereby become so corrupted that it ever afterward
would be incapable of constituting a valid consideration
for a note given for its use and enjoyment. This stat-
ute was directed not at money or property that had been
won at a game of chance or gambling device, but against
notes and the other contracts enumerated, that may be
made or given in settlement of bets or wagers of money
or property lost at some game of chance or gambling
device. The Legislature did not aim its blow at the in-
animate dollar that might perchance be taken to and
loaned or exchanged in the gambling room by
gamblers, but against the evil of gambling, and the most
ruinous result that follows the practice of permitting
drafts upon one's future resources and energies to be
made, to satisfy the losses of a present vicious craving,
as is done when one is permitted to gamble and to
satisfy his losses when they occur by the issuance of
his future payable obligations or contracts.

Here the note in suit, according to the testimony
of the witness Ballard, was not given in settlement of a
bet or wager between himself and defendant, at a game
of chance, wherein Ballard was successful and the de-
fendant was unsuccessful; nor was it given in considera-

tion of money or property won at any game of chance
or by or through any gambling device, but it was given
to Ballard by defendant in exchange for five checks
which the defendant had drawn the previous afternoon
and night upon his local banker in the city of De Soto
and given to said Ballard on account of money at that
time borrowed from said Ballard during the progress
of a game of poker then being played by said Ballard,
the defendant and others.   (The money was borrowed
by defendant of Ballard to enable him to buy poker
chips or checks, as they are commonly called, in order
that he might continue in a game of poker then in
progress, by betting said chips or checks upon the result
of the game as it would progress from one deal of the
cards to another.)

As said above, while this note in the hands of Bal-
lard may have been defeated because the court would
refuse its aid to assist one wrongdoer to enforce a con-
tract made with another in the furtherance of an un-
lawful act, yet quite different is the situation of this
plaintiff who is an innocent purchaser of the note for
value before its maturity, with the rules of the law mer-
chant, and the provisions of our statute declaratory
thereof to be applied in his favor.   In our opinion, this
note was not made under circumstances condemned by
the statute in question, and for this reason it must fol-
low that the trial court committed error against the
right of plaintiff in directing the jury to return their
verdict for the defendant.

To appellant's further contention, that section
3427 of the act in question should be declared uncon-
stitutional in so far as it may be intended to discrim-
inate against the holders of negotiable notes like the one
in suit, who have taken them in the ordinary course of
business, without notice of their infirmity, it need only
be said, that this section of the statute does not under-
take to discriminate against the holder of any character
of notes, obligations or contracts put under the ban of

the law by the preceding section. All notes, obligations, contracts, etc., that are made, issued or created under the conditions mentioned in section 3426, supra, are declared void, and the following section, 3427, merely declares that the assignment shall not affect the defense of the person executing the same.

While it may be conceded, as appellant asserts, that among the inalienable rights of the citizen is that of the liberty of contract, and further that the courts should ever guard with zealous care legislative encroachments thereon, we are unable to find that by the statutes in question any right of private contract guaranteed to plaintiff by the Constitution is denied, taken away, or in any manner abridged. There is no vested right in the plaintiff or any other citizen of the State to buy, purchase or receive, any kind or character of obligation, contract or agreement made between others regarding the payment of money or property freed from the right of the maker thereof to interpose any defense he may have against its enforcement or collection. No curtailment of the right of the plaintiff to buy or purchase any kind of a paper obligation, or to make whatever contract he may think proper with the holder and owner thereof, is sought or attempted by this statute. He may purchase and contract as freely now regarding notes and obligations of the character enumerated in the statute as he could prior to its enactment, but in aid of a declared policy of the State, the Legislature has simply enacted, as it had the manifest right to do, that notes and other obligations enumerated, and made under circumstances therein set out (whatever be their form) should be void, and, that the fact that made them so, might be interposed by the maker as against anyone into whose hands said obligations may fall.

If the Legislature thought wise or expedient, there could be no doubt of its power to destroy the negotiability of notes and obligations of every kind and character, and that too without regard to whether they had

beeen made under conditions and circumstances that would in any way affect their validity.

Appellant's contention that the statute in question is unconstitutional is without merit, but for the reason given above it follows that the judgment of the circuit court must be reversed and the cause remanded for a new trial, and it is so ordered.

All concur.