'C. W. Morton v. Provident National Bank of Waco.

Decided February 28, 1906.

**1.—Gaming Debt—Indorsement of Securities.**

When the law declares void the indorsement of securities in payment of a gambling debt the indorser is not precluded from asserting its invalidity because in pari delicto with the indorsee.

**2.—Same—Money Advanced to Continue Play.**

Under the statutes of Missouri (Rev. Stats. Mo., sec. 3432), making void the indorsement of a bank draft in consideration of money won at gaming, where the draft was indorsed as security for money to enable the indorser to continue play, which was advanced to him in sums of $50 at a time, and these successively lost till the amount equalled that of the draft, which was then retained by the winner in settlement, the transaction constituted an indorsement for money won at gaming, and was void under the statutes.

**3.—Same—Limitation.**

The limitation imposed by the statutes of Missouri (Rev. Stats. Mo., sec. 3432), upon actions to recover back money or property won at gaming, does not apply to a defense urged against the enforcement of a bank draft indorsed to the winner in settlement of a gambling debt; such indorsement being made void by the statute, the defense can be urged whenever it is sought to be enforced by the holder, though after the time fixed for bringing suit to recover back money, etc., won.

**4.—Gaming Transaction—Winnings by Several Participants.**

It seems that the indorsement of a draft in settlement for money won at gaming may be avoided in the hands of the indorsee, though others than he participated in the game and the winnings; but the evidence here is held to support the conclusion that all was won by the indorsee.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Jennings & Penry,* for appellant.—The drafts were not indorsed and delivered to plaintiff in consideration of money or property won at any game or gambling device by plaintiff from said defendant within the meaning and intention of section 3426, as aforesaid, and said section has been construed by the Supreme Court of the State of Missouri, in a case similar in facts to the state of facts set up in defendant's cross bill, and said court has declared in the case so determined that said statute has no application. Sec. 3426, chap. 32, Rev. Stats. of Missouri,

1899, pp. 587, 588; Higginbotham v. McGready, 183 Mo. Rep., 96 (S. C., 81 S. W. Rep., 833).

The maxim of the law, *in pari delicto potior est conditio possidentis* applies, and the courts will leave defendant to bear the penalty of his own misdoing by refusing to grant him the affirmative relief he seeks to cancel and annul his said contracts of indorsement. Ullman v. St. Louis Fair Assn., 167 Mo. Rep., 273 (66 S. W. Rep., 949) ; Beer v. Landman, 88 Texas, 450.

The indorsement and delivery of a bill of exchange in consideration of money advanced and loaned by one person to another to enable such other person to continue playing in a game or gambling device played for money is not such a transaction as is declared void by section 3426, chapter 32, of the statute laws of the State of Missouri, Revised Statutes, 1899. Higginbotham v. McGready, 183 Mo. Rep., 96 (81 S. W. Rep., 833).

The court erred in rendering judgment for the defendants on the cross action of A. W. McGregor, because the plaintiff, in his suit herein against the defendant, the Provident National Bank, to recover of said bank upon the drafts indorsed to him by A. W. McGregor, is seeking no relief against said A. W. McGregor by reason of his said indorsements, and has not impleaded him with the said bank. Ullman v. St. Louis Fair Assn., 167 Mo. Rep., 273 (66 S. W. Rep., 949) ; Cutshall v. McGowan, 98 Mo. App. Rep., 702 (73 S. W. Rep., 935) ; Beer v. Landman, 88 Texas, 450; Daniel on Neg. Instruments, vol. 1 (4th ed.), sec. 669.

This right of action is restricted by the provisions of section 3432, of the same chapter, to a period within three months from the time such loss occurred, and not afterward, and as more than three months had so elapsed without suit brought by said defendant against plaintiff to recover the same, not only is his remedy gone, but his right of action also. Connor v. Black, 132 Mo. Rep., 150 (33 S. W. Rep., 783) ; Crenshaw v. Columbian Min. Co. (Kansas City Court of Appeals, Mo.), 86 S. W. Rep., 261; Cutshall v. McGowan, 98 Mo. App. Rep., 702 (73 S. W. Rep., 934) ; Ross v. Kansas City S. R. Co. (Texas Civil Appeals), 79 S. W. Rep., 626; The Harrisburg, 119 U. S. Rep., 199; Theroux v. Northern Pac Ry. Co., 64 Fed. Rep., 85.

The judgment of the court is contrary to the evidence in this: the evidence does not show that the money the defendant, A. W. McGregor, received from plaintiff in exchange for the drafts sued upon was won from him by the plaintiff.

*J. R. Dooms* and *S. H. Clayton,* for appellee.—Where the pleading alleges the details of the transaction, and that under the laws of another State and the construction thereof by its Supreme Court the transaction is void, such pleading is good against a general demurrer. Williams v. Wall, 60 Mo., 318; Missouri Rev. Stats., sec, 3426; Saving Bank v. National Bank, 38 Fed. Rep., 800; Chapin v. Dake, 57 Ill., 295.

When money is lost in gaming and an obligation, such as it is, exists upon the borrower to repay the loan and debt, the retention of the collateral by the lender after a reasonable time or an appropriation thereof to his own use, constitutes a full discharge of the debt and the

consideration thereof is money won at a game of gambling device and within the Missouri Statute, section 3426, and the lender holds no title to the instrument. Rev. Stat. Missouri, sec. 3426; Beer v. Landman, 88 Texas, at page 456, and previous authorities.

The endorsement of a bank draft when the consideration is money won at a game or gambling device is void under the statutes of the State of Missouri, section 3426, and the endorsee has no legal or special ownership. Rev. Stat. of Missouri, sec. 3426; Williams v. Wall, 60 Mo., 318; Chapin v. Drake, 57 Ill., 295; Saving Bank v. National Bank, 38 Fed. Rep., 800; Pearce v. Rice, 142 U. S., 28; Beer v. Landman, 88 Texas, 456.

The statute providing that any action for money or property brought under the gaming chapter shall be commenced within three months, etc., does not prohibit a defendant or party interested from pleading that the endorsement is void even after a lapse of three months. Rev. Stat. of Missouri, sec. 3426; Statute of 9 Anne, Ch. 14; Statute of Illinois cited in Pearce v. Rice, 142 U. S., 28; Statute of California cited in Poorman v. Mills, 2 Am. Rep., 451.

Where plaintiff and others played at a game with defendant and the plaintiff and others won defendant's money and defendant endorses and delivers to plaintiff certain drafts in consideration of the money won by plaintiff and others, it is not necessary to bring the case within the statute of Missouri, section 3426, that plaintiff himself won all the money, and it is immaterial whether plaintiff won any of the money himself, especially if he participated in the game. Section 3426, Missouri Statutes; Jones v. Akin, 80 S. W. Rep., 385.

EIDSON, ASSOCIATE JUSTICE.—We take the statement of the nature and result of the suit from appellant's and appellees' briefs, which is as follows:

"This was a suit upon two lost drafts, brought by the appellant, C. W. Morton, plaintiff, as endorsee, against the appellee, the Provident National Bank of Waco, Texas, defendant, as drawer. The drafts as alleged in plaintiff's petition, were for the sum of $300 each drawn by the defendant bank on the Chase National Bank of New York City, payable at sight to the order of A. W. McGregor, and endorsed by him in blank to plaintiff. That on the 25th of August, 1902, the two drafts were presented to the Chase National Bank for payment and payment refused, and on said date the same were duly protested and notice of protest given to the defendant bank. Plaintiff prayed for judgment against the defendant bank for the amount of the drafts, interest and costs of suit.

"Defendant bank filed its answer setting up: First, general demurrer; second, general denial; third, a special answer admitting the execution of said drafts as set out in plaintiff's petition, but alleged that it had stopped payment of the two drafts at the request of the payee therein, A. W. McGregor, upon the representation made by him to the bank by wire from Kansas City, Mo., that he, McGregor, had lost the drafts or they had been stolen from him, which representation the bank believed to be true. That subsequently on the 17th day of December, 1902, the bank repaid McGregor the $600, the full value of

the drafts, demanding and receiving from him a bond of indemnity executed by himself and Mrs. A. P. McGregor and James B. Baker, as sureties, indemnifying the bank against all loss it might sustain by reason of said repayment, and prayed that the parties to said bond might be made parties defendant in the suit, and that in the event plaintiff recovered judgment against the defendant bank, that it have judgment over against said A. W. McGregor and his sureties on said bond.

"A. W. McGregor and his sureties, James B. Baker and Mrs. A. P. McGregor, were made parties defendant, and A. W. McGregor filed an answer and cross-bill, setting up: First, general demurrer to plaintiff's petition; second, general denial; third, special plea by way of cross bill against plaintiff admitting original ownership of the two drafts sued upon. That on the 22d day of August, 1902, said defendant, A. W. McGregor, was in Kansas City, Mo., and got into a game of "craps," a game and gambling device in which plaintiff participated. That he had about $200 in money which he lost at said game; that plaintiff agreed to loan and advance the sum of $50 to defendant on condition that he would endorse and deposit with plaintiff one of said drafts and would gamble further, all of which he did, losing this $50. Further advancements were made on a similar condition, until the full amount of the first draft was advanced and lost by defendant, and the same was true of the second draft, the full amount thereof was advanced and lost by defendant. Defendant further alleged that both said drafts were won by the plaintiff in the manner above set out, who participated in said games. That said transaction occurred in the State of Missouri and not in the State of Texas, and under the laws of Missouri the assignment and endorsement of said drafts by defendant to plaintiff for the consideration and under the circumstances above detailed were null and void, and that plaintiff acquired no title thereto, and defendant plead in support of said contention the statutes of Missouri, section 3426, Revised Statutes of Missouri, 1899, in force at the time of said transaction, being alleged to be substantially as follows: 'That all conveyances, bonds, bills, notes and securities when the consideration is money or property won at any game or gambling device shall be void and may be set aside and vacated by any court of competent jurisdiction.' That this statute has been construed by the Supreme Court of Missouri to embrace endorsements of bills of exchange and transfers given in payment of a gambling debt, or for money lost at a gambling device, such as the transaction above stated; and, therefore, that the plaintiff's title to the drafts sued upon must be governed by the laws of Missouri, and section 3426 particularly, and the decisions thereunder, and not by the laws of Texas.

"The prayer of the cross-bill is that said defendant's endorsements of the two drafts sued upon be declared canceled and of no effect, and that he be declared the true and lawful owner of the same, for costs, and that defendant and A. P. McGregor and J. B. Baker impleaded herein by the defendant bank go hence without day and for general relief.

"Plaintiff filed answer to cross-bill of defendant A. W. McGregor setting up: First, general demurrer; second, general denial; third,

statute of limitations of three months under section 3432, chapter 32 of the statute laws of Missouri, and of which chapter section 3426, as pleaded by defendant A. W. McGregor in his cross-bill is a part, which section provides that any action for money or property brought under said chapter should be commenced within three months from the time the right of action accrued and not afterward, and alleging that more than three months had elapsed before action had been commenced by said A. W. McGregor after his right of action against plaintiff had accrued under said section 3426; fourth, plea of statute of limitations of State of Texas of two years.

"Defendant filed supplemental answer to paragraphs 3 and 4 of the answer of plaintiff to cross-action of defendant A. W. McGregor, setting up special exceptions to the same on which no rulings were made by the court, and a special plea setting up that the statute of two years limitation did not apply because plaintiff had continuously resided in Missouri and not in Texas ever since August 22, 1902, to this date (May 30, 1905) and that plaintiff's petition was filed herein September 12, 1904, less than twelve months preceding the filing of defendant's answer and cross-bill herein.

"The defendants, James B. Baker and A. P. McGregor also filed supplemental answer adopting the original answer of defendant Provident National Bank. Provident National Bank, James B. Baker and A. P. McGregor filed supplemental answer adopting the original answer and cross-bill of defendant A. W. McGregor."

The case was tried by the court and judgment was rendered for the defendants.

The allegations of the special plea contained in the cross-bill of A. W. McGregor which was adopted by appellees, were supported by the evidence.

*Opinion.*—Appellant's first assignment of error complains of the action of the court below in overruling his general demurrer to the cross-action filed herein against the plaintiff by the defendant A. W. McGregor. The cross-bill of A. W. McGregor alleged that the drafts sued on were endorsed and placed in the hands of appellant as security for or in settlement of money lost by him and won by appellant at the game of "craps," a game and gambling device; that the transaction occurred in the State of Missouri, and that under the law of Missouri such endorsements or transfers are void. In our opinion this pleading was not subject to general demurrer. The transfers or endorsements being alleged to be declared void by the law, the rule as to parties in *pari delicto* would not apply.

Appellant's second, third, fourth and fifth assignments of error raise practically the same question; appellant's contention thereunder being, in substance, that the endorsements and delivery of the drafts by McGregor to appellant, under the circumstances shown by the evidence, did not constitute such a transaction as is declared void by the law of Missouri. The law of Missouri under which it is claimed that the transaction between McGregor and appellant is void, is section 3426, Revised Statutes of Missouri, of 1899, which reads as follows:

"All judgments by confession, conveyance, bonds, bills, notes and

securities, when the consideration is money or property won at any game or gambling device shall be void, and may be set aside and vacated by any court of competent jurisdiction upon suit brought for that purpose by the person so confessing, giving, entering into or executing the same, or by his executors, administrators or by any creditor, heir, devee, purchaser or other person interested therein."

A. W. McGregor testified as follows: "That he, witness, was engaged in playing 'craps,' a game played for money. That the plaintiff and two other men were playing with him in the same game. That witness had with him at the time approximately the sum of $200 in money and the two $300 drafts in controversy. That in the progress of the game he lost the $200, and that while still at the gambling table applied to the plaintiff, offering to cash one of the drafts to procure other money. That plaintiff replied to witness that he didn't have as much as $300 to cash the same, didn't have but $40 or $50, but said: I'll tell you what I'll do. If you will gamble some more, I'll let you have $50. If you win you get your draft back, if you don't I'll let you have another $50. And that is the way it went. When witness would lose $50 plaintiff would advance him another $50. Sometimes the plaintiff would not have that much, and he would borrow from the other men, $10 from one and $20 from another. The condition with each advance was that witness would gamble some more, plaintiff saying: 'If you want to gamble some more, I will let you have more.' Witness endorsed the first draft upon receipt of the first $50—endorsed one draft at a time. Plaintiff was sitting there at the table playing at the game when he advanced witness all the money he got from him. Plaintiff offered to give witness a currency check for $250 and $50 in money when witness offered him the first draft to be cashed, but witness refused the offer, telling plaintiff that his check would be no better to witness than his New York exchange. Witness further stated that he showed plaintiff a letter from the Provident National Bank which described the drafts he had, and which gave witness's name and his signature in the body of the letter. When witness lost the $600 he went down stairs, met one Robert Goree and borrowed $5 to send some telegrams, and wired the bank to stop the payment of the drafts.

"On cross-examination witness stated that there were four men in the game, including himself, and all were betting and putting up money. The way the game was played, each player rolls the dice and puts up his bet. He rolls to make seven or eleven. If he wins each of the other players pay him the amount of his bet. If he loses he passes the dice to the next player and he rolls. Each party rolls. He, witness, did not win a dollar that night. He was not pretty drunk. When he first went in he had only a couple of drinks, but drank more the longer he stayed. Was perfectly straight, did not stagger. Witness would not have given his drafts over to the plaintiff without receiving the money for them. He had refused plaintiff's checks. He certainly wanted the money for his drafts, one draft first. It took witness from half past nine until four o'clock in the morning to lose his money, playing from $2 to $5, sometimes $10 as a stake. That plaintiff himself won the money and participated in all the games from beginning to end, and defendant also identified the place next day."

From the testimony quoted it appears that the drafts were received by appellant as security for money loaned and to be loaned McGregor by appellant for the purpose of gambling with him, and that appellant loaned McGregor the full amount of the drafts and won same from him; that appellant at this stage of the proceedings held the drafts as security for money won by him from McGregor, and this view of the transaction would bring it within the meaning of the statute of Missouri, above quoted. Having received the drafts as security for money loaned and to be loaned for the purpose of gambling, as above stated, and having won from McGregor the full amount of drafts, and McGregor not paying the amount when the game ended, appellant's retaining such drafts and claiming them as his own property, predicated upon his right thereto by reason of the loan of the amounts of such drafts to McGregor for the purpose of gambling with him, and the loss by McGregor of such amounts and the winning thereof by appellant, would make the transaction practically the same as if McGregor had put up the amounts of the drafts, $50 at a time during the course of the game, and appellant had succeeded in winning each successive amount until his winnings aggregated the full amounts of the drafts. Under such a view of the transaction the consideration for the transfers or endorsements of the drafts would clearly be money won at a game of chance, and the transaction would come within the meaning of said law.

In the case of Williams v. Wall, 60 Mo., 318, the plaintiff had endorsed to one Bailey and put up as a stake on a game of chance, called three-card monte, a certain draft, which Bailey won from plaintiff at said game; and, after acquainting the defendant in the suit with the circumstances under which he obtained the draft, Bailey endorsed and delivered same to him, and induced him, for a consideration, to collect the draft, which he did, and the plaintiff brought suit against him to recover the amount of such draft. The trial court sustained a demurrer to plaintiff's petition alleging the above facts. On appeal the Supreme Court of Missouri reversed the judgment of the trial court, and in discussing the section of the statute under consideration, used the following language:

"The third section declares void all judgments by confession, conveyances, bonds, bills, notes and securities when the consideration is money or property won at any game or gambling device. Provision is also made by that section to vacate such judgments and to cancel such notes, etc., by proper procedure on the part of the person directly interested, his heirs, legal representatives, creditors, etc.

"The fourth section prevents the assignment of any bond, bill, judgment, etc., from affecting the defense of the person executing the same. And the ninth section limits the period wherein action must be brought for the recovery of money or property to three months.

"The central idea of the act before us, which is evidently in aid of the statute defining and punishing gambling as a criminal offense, is to discourage and suppress gaming by the most effective of all methods, that of preventing the gambler from retaining the spoils of his nefarious vocation, and from successfully transferring them to colleagues as unscrupulous as himself.

"No doubt is entertained that the endorsement from plaintiff to Bailey, falls within the inhibitions of the act·under consideration, as it is a fresh and substantive contract and may be regarded either as a security (2 Bouv. L. Dict., 493) or as a new bill (Slacum v. Pomeroy, 6 Cranch., 221; Coffee v. Planters Bank of Tenn., 13 How., 183; Van Staphorst v. Pearce, 4 Mass., 258) within the meaning of that act; and, unless such construction be given thereto, the wholesome provisions of this statute can with ease be evaded, by simply endorsing for gaming purposes, antecedent securities, whose consideration is altogether legal; thus defeating the evident intent which gave origin to the statute. No such view of the law can therefore be entertained.

"In Illinois, under a similar prohibitory enactment, it was held that an endorsement of a draft was in the purview of the law, although not expressly named therein. (Chapin v. Dake, 57 Ill., 295.)"

The endorsements of the drafts by McGregor to appellant, under the circumstances as detailed by him as a witness on the trial in the court below, might be regarded as a security, or as a new bill, and in either case would come within the meaning of the statute. The doctrine announced in this decision is approved in Saving Bank v. National Bank, 38 Fed. Rep., 800.

We do not think the doctrine laid down in the case of Higginbotham v. McGready, 183 Mo., 96, 81 S. W., 883, militates against the conclusion we have reached. That was a very different case upon the facts to the one under consideration. In that case, the note sued upon was in the hands of an innocent purchaser, who obtained it from one Ballard, who with others, had participated in a game of poker with the defendant; and in the opinion the court uses the following language:

"Here the note in suit, according to the testimony of the witness Ballard, was not given in settlement of a bet or wager between himself and defendant at a game of chance wherein Ballard was successful and the defendant was unsuccessful, nor was it given in consideration of money or property won at any game of chance, or by or through any gambling device, but it was given to Ballard by defendant in exchange for five checks which the defendant had drawn the previous afternoon and night upon his local banker in the city of De Soto, and given to said Ballard on account of money at that time borrowed from said Ballard during the progress of a game of poker then being played by said Ballard, the defendant and others. The money was borrowed by defendant of Ballard to enable him to buy poker chips or checks, as they are' commonly called, in order that he might continue in a game of poker then in progress, by betting said chips or checks upon the result of the game, as it would progress from one deal of the cards to another. As said above, while this note in the hands of Ballard may have been defeated because the court would refuse its aid to assist one wrongdoer to enforce a contract made with another in. the furtherance of an unlawful act, yet quite different is the situation of this plaintiff, who is an innocent purchaser of the note for value before its maturity, with the rules of the law merchant, and the provisions of our statute declaratory thereof, to be applied in his favor. In our opinion this note was not made under circumstances condemned by the statute in question,

and for this reason, it must follow that the trial court committed error against the right of plaintiff, in directing the jury to return their verdict for the defendant."

In the case at bar the testimony of McGregor shows (and while it conflicts with the testimony of appellant's witnesses, the court below evidently acted upon it) that the endorsements of the drafts were made to appellant in pursuance to and in acceptance of his proposal to loan the money to McGregor if he would continue in the game with him, and of course use the money in the game; and that while others were in the game, appellant won all of the money loaned by him to McGregor on the security of the drafts; that appellant loaned McGregor the full amounts of the drafts and won same from him, and after doing so, retained the drafts which had been endorsed to him. We think that the effect of this testimony is to prove that the drafts were endorsed by McGregor to appellant as security for money won by the latter from the former, and that after winning the entire amounts of the drafts, appellant retained same in settlement of such winnings. Hence the consideration for the endorsements of the drafts was money won at gaming, and the transaction such as is denounced by the statute in question.

Under his sixth and seventh assignments of error appellant claims that McGregor's cross-action should not have been entertained by the court below, because it was, in effect, an action for money or property lost at a game or gambling device, and that such action is required by the law of Missouri to be brought within three months from the time the cause of action accrued, and the said cross-bill was not filed within that time.

We do not agree with appellant in this contention. As the law declares a transaction of the kind shown by the testimony in this case void, the party aggrieved, or his privies, may, in a suit brought to enforce an obligation obtained in or as a result of such transaction, plead the nullity of the obligation on account of its having been obtained under circumstances condemned by the law, and ask the court to set aside such void obligation. We think the language of the statute declaring the transaction void and providing that the obligation may be set aside and vacated in any court of competent jurisdiction upon suit brought for that purpose by the person executing the transfer or endorsement, or by any creditor, purchaser or other person interested therein, authorizes the suit to be brought to set aside or vacate such transfer or endorsement by cross-bill in a suit brought to enforce the obligation based upon the transfer or endorsement; and, such transfer or endorsement being absolutely void, this may be done at any time.

We do not think the cross-bill of McGregor constitutes an action for money or property so as to come within the meaning of section 3432 of the Revised Statutes of Missouri, which provides that any action "for money or property brought under this chapter (32) shall be commenced within three months from the time the right of action accrued, and not afterward." If McGregor had not stopped the payment of the drafts and they had been paid to appellant, and he, McGregor, had sought to recover the money by suit, then said section 3432 might apply to such suit. But, as said by the court in Higginbotham v. McGready, supra, in discussing the meaning and intention of section 3426,

"This statute was directed not at money or property that had been won at a game of chance or gambling device, but against notes and the other contracts enumerated that may be made or given in settlement of bets or wagers of money or property lost at some game of chance or gambling device." And, in our opinion, the obligation sued on in this case was a contract given as security for or in settlement of bets or wagers of money lost at a game of chance played by appellant and McGregor.

Appellant's eighth and ninth assignments of error are overruled. While it does appear from McGregor's testimony that there were two other persons besides witness and appellant ostensibly engaged in the game, the witness does not testify that either of the other persons made any winnings at all, but he does testify that appellant won all of his money; and a reasonable inference from McGregor's testimony is that while all engaged in the game put up money, no one won except appellant. Hence, in our opinion, the court below was justified in finding as a fact that the endorsements of the drafts were made as security for money won by appellant from McGregor; or that they were made in settlement of bets or wagers of money lost at a game of chance between appellant and the said McGregor. However, we think if the endorsements were made as security for, or in settlement of, wagers of money lost by McGregor in a game in which appellant participated, it would be unimportant that others also participating in the game won McGregor's wagers or a part thereof. (Jones v. Aiken, 80 S. W. Rep., 385.)

There being no reversible error pointed out in the record, the judgment of the court below is affirmed.

*Affirmed.*